POLK MANOR CO. *v.* MANTON.

1. COVENANTS—BUILDING RESTRICTIONS—GASOLINE STATION IN RESI-
DENCE DISTRICT.

   Erection of gasoline station on corner lot across street from large
   apartment house *held*, properly enjoined where subdivision re-
   strictions against construction for commercial purposes had
   been observed with but one exception a block away, although
   many residence buildings had been used for commercial pur-
   poses, and evidence shows reasonable prospect that plaintiff
   would suffer substantial damage as result of noise and glare of
   lights through defendants' proposed violation.

2. SAME—CASES DETERMINED ON OWN PARTICULAR FACTS.

   Building restriction cases present such wide difference in facts
   that, in equity, but few rules can be applied generally, and in
   the main each case must be determined on its own facts.

3. SAME—RESTRICTIONS ARE NEGATIVE EASEMENTS WHICH WILL BE
ENFORCED SO FAR AS BENEFICIAL.

   Restrictions are, in nature, reciprocal negative easements, and
   while they remain beneficial to the dominant estate, material
   violations of them will be enjoined to the extent that they
   remain beneficial.

4. SAME—ACQUIESCENCE IN OTHER VIOLATIONS—ESTOPPEL.

   The right to enforce a restrictive covenant is not affected by
   acquiescence in the violation of another and distinct covenant,
   as to the use of the lot, contained in the deed.

Appeal from Wayne; Miller (Guy A.), J.  Sub-
mitted January 14, 1936.  (Docket No. 54, Calendar
No. 38,628.)  Decided March 2, 1936.

Bill by Polk Manor Company, a Michigan corpora-
tion, against Walter W. Manton and others to re-
strain the violation of a restrictive covenant and

other relief. Decree for plaintiff. Defendant appeals. Affirmed.

*Morris Garvett,* for plaintiff.

*Samuel B. Keene,* for defendants Manton, Nightingale and Langer.

*Griffin, Heal & Emery* (*Thomas V. Lo Cicero,* of counsel), for defendants Fuller.

BUTZEL, J. Plaintiff is the owner of lots 21, 23 and 25, defendants of lot 26, all in Duffield & Dunbar's subdivision of lot No. 1, quarter section 45, 10,000-acre tract, Greenfield (now Detroit), Wayne county, Michigan. Plaintiff's property is improved with a large and attractive six-story building, containing 94 apartments, located on the northeast corner of west Euclid and Second avenues, while defendants' lot is at the southeast corner of the same streets. The subdivision is laid out so that all the lots with the exception of those on Woodward avenue front on west Euclid avenue. The entrance to plaintiff's building is on the latter street. The lots in the subdivision were sold subject to the following restrictive covenant:

"This conveyance is made upon the express condition that no building should be erected upon said premises by said party of the second part, her heirs, representatives or assigns, excepting for the purpose of a dwelling only. That any buildings so erected shall not be less than 15 feet from the lines of Euclid avenue, and shall cost not less than $2,500. Said party for herself, her heirs, executors and said Bethune Duffield hereby covenant, bargain and agree with said party of the second part, her heirs and assigns in selling land from the said subdivision the foregoing building restrictions should be incorporated in each and every deed, and that their heirs,

executors, administrators, shall enforce such restrictions.''

The owners of all the lots in the subdivision with the exception of one lot at the southwest corner of Woodward and west Euclid have rigidly observed the restrictions as far as erecting buildings to be used for residential purposes. By acquiescence or consent the residences were not limited to single dwelling houses, but a number of buildings containing two or more apartments have been erected on the street. There is no controversy over the building line restriction which has been strictly observed. A house formerly stood on defendants' lot, but it has been torn down or removed for the purpose of erecting suitable buildings for use of the property as an oil and gasoline station. Plaintiff filed a bill to enforce such building restrictions as still exist. Testimony showed that some seven years ago there was a beauty parlor conducted in plaintiff's building. Many of the houses in the subdivision are being used for business purposes, such as dressmaking, cleaning establishments, beauty parlors, boarding houses, etc., all of which are being conducted from residences. No stores or buildings designed for business purposes have been built, with the exception of the single case above noted. There is a gas station on the west side of Second avenue abutting the alley in the rear of plaintiff's building, but located in another subdivision. Second avenue from Grand boulevard to Clairmount avenue, with the exception of a few sections, has changed from a residence to a business street. The residences at the northwest and southwest corners of Second and west Euclid avenues are being used respectively for a beauty parlor and dressmaking establishment. A more detailed statement of the changes in the character of Second ave-

nue is set forth in *Golden* v. *Davis*, 266 Mich. 7, wherein we held that one living at the corner of Third and Gladstone avenues did not suffer sufficient injury so as to complain of a violation of a restriction in the same subdivision, and on the same street but at the corner of Second avenue when at that point the character of the latter street had changed. Testimony showed that if an oil station were built opposite plaintiff's property the rental value, particularly of the many apartments fronting on west Euclid avenue, would be very much depreciated and those seeking an abode in an apartment in a residential district would object to the noise, glare of lights, etc., incident to an oil and gas station. The sole query in the present case is whether plaintiff, who owns very valuable property devoted to residential purposes, still has a material interest in such part of the restrictions, and whether they have been lost or abandoned through minor violations of the restriction or through change of neighborhood on a street on which only residences have been built. The trial judge, in finding for plaintiffs, stated:

"Where the restrictive covenant has not been rigidly enforced, and where certain structures and uses have been tacitly permitted which are violative of the strict terms, but where in spite of such relaxation there still remains something of substantial value to those entitled to benefit by its provisions, they are still entitled to enforce it insofar as they are not affected by the principles of estoppel or waiver. Applying this principle, it seems clear that under the testimony there is no estoppel, and there has been no waiver of the right to object to the building and operation of structures which partake in no degree whatever of the character of residence within this subdivision, at least so far as the present plaintiff is concerned. The plaintiff is clearly estopped to

object to such commercial uses as now exist in the residential buildings upon the subdivision. It is not estopped to object to the new erection of structures which partake in no way of a residential character and whose use is to be exclusively commercial instead of being partially commercial in conjunction with a residential use. * * *

"I think the conclusion is fair that in this case there is no element of waiver or estoppel; that there is a very reasonable prospect of substantial damage to the plaintiff's property; that the restrictive covenant in question is still of substantial value to the plaintiff, even as modified by acquiescence and usage; and that there is here presented a substantial controversy which appeals to a court of equity and entitles plaintiff to injunctive relief."

A somewhat similar situation arose in *Putnam v. Ernst*, 232 Mich. 682, wherein the court, after commenting upon the difficulty of applying any general rule to building restriction cases because of the wide difference in facts, and stating that each case must be determined on its own facts, laid down the general rule that:

"These restrictions are, in nature, reciprocal negative easements. As to other lots in the subdivision, defendants' property is here servient, the other lots dominant. While the restrictions remain beneficial to the dominant estate, material violations of them will be enjoined and to the extent that the restrictions remain beneficial. *Oliver v. Williams*, 221 Mich. 471; *Kelman v. Singer*, 222 Mich. 454; *Misch v. Lehman*, 178 Mich. 225."

The opinion also quoted with approval from the syllabus in *Lattimer v. Livermore*, 72 N. Y. 174, as follows:

"The right to enforce such covenant is not affected by acquiescence in the violation of another and dis-

tinct covenant, as to the use of the lot, contained in the deed.''

See, also, *Voorheis* v. *Powell,* 261 Mich. 378 (85 A. L. R. 932); *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625; *Wilcox* v. *Mueller,* 250 Mich. 167; *Home Development Co.* v. *Omeleanchik,* 253 Mich. 568; *Wineman Realty Co.* v. *Pelavin,* 267 Mich. 594.

The decree of the lower court is affirmed, with costs to plaintiff.

North, C. J., and Fead, Wiest, Bushnell, Edward M. Sharpe, Potter, and Toy, JJ., concurred.