# Meyer et al. v. Stein et al.

Nov. 22, 1940.

Churchill Humphrey, Judge.

Edward W. Bensinger, Jr., Richard Priest Dietzman and Anna Hubbuch Settle for appellants.

Henry M. Johnson and Lucian L. Johnson for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

About thirty years ago the Highland Realty Company opened a subdivision in Louisville known as Windsor Place covering three blocks, divided into 47 lots, between Bardstown Road and Baxter Avenue. It was in an excellent neighborhood and by building restrictions

the realty company intended to, and did, convert the property into a high-class residential district. Involved in this litigation are two lots, No. 26 and No. 27, the former being located at the southeast corner of Windsor Place and Bardstown Road, while the latter is just south of lot No. 26 and adjoins it.

Lot No. 27 and 10 feet of lot No. 26 were conveyed to R. L. Woodard in 1913, and the balance of lot No. 26 was conveyed to him in 1915. The restrictions contained in these deeds are numerous and lengthy, hence we will not incorporate them in the opinion and reference will only be made to the pertinent parts thereof. Both deeds recite the property conveyed "shall be used only for the erection of a single residence and no residence shall be erected thereon that shall cost less than $5000". Following this in both deeds appear these restrictions; limiting the materials out of which the exteriors and roofs may be constructed; providing all out-buildings must be under one roof and cannot be erected until the residence is begun; limiting the height and location of fences; limiting the grade of the lots to the present grade above Windsor Place. Such restrictions were included in all 47 of the lots in the subdivision but two, while the deed to lot No. 27 (upon which is located the house in controversy) and the deeds to 31 other of these lots contained a covenant that the grantor "will restrict all its other lots in said subdivision, fronting on Windsor Place, for residence purposes only". However, the covenant just quoted was omitted from the deed conveying the balance of lot No. 26. The deed to lot No. 26, which is located on the corner, recites that after a residence is built facing Windsor Place in conformity with the above restrictions, the owner may then erect an apartment house "on the rear of said lot and on the 40 feet of same laying along the alley" (evidently meaning it was to face on Bardstown Road), the lower floor of which may contain offices or store-rooms. It appears from the record that this privilege has not been exercised and that lot No. 26 is entirely vacant.

By a zoning ordinance of October 1, 1935, the City of Louisville included the property at Windsor Place and Bardstown Road in the commercial district. Mrs. Elbrick, the present owner of lots No. 26 and No. 27, entered into a contract on October 6, 1938, with Herman Meyer to sell him the property for $27,500, provided

she could convey it free from restrictive covenants and he could use the house on lot No. 27 as a funeral home. Meyer advertised he was purchasing the property for use as a funeral home, whereupon the 48 owners of homes in Windsor Place instituted this suit in equity seeking to enjoin Mrs. Elbrick from selling the property free from the restrictive covenants and to enjoin Meyer from using same as a funeral home. The chancellor granted the injunctions and his judgment upheld the building restrictions.

Many reasons are given by appellants why the judgment should be reversed and the arguments in the briefs cover a wide range. However, we think but two questions are presented by the appeal: 1. Does the proposed use of the property by Meyer violate the restrictions contained in the deeds; 2. if so, have such restrictions been abandoned?

Restrictions upon the free alienation of property are not favored by the law and are usually strictly construed against those seeking to enforce them. This rule applies to building restrictions. However, if building restrictions are reasonable, they are uniformly enforced by courts and are given the effect intended by the parties as gathered from the conveyance in the light of surrounding circumstances. Anderson v. Henslee, 226 Ky. 465, 11 S. W. (2d) 154; Glenmore Distilleries Co. v. Fiorella, 273 Ky. 549, 117 S. W. (2d) 173; Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S. W. (2d) 1024. Windsor Place is an exclusive residential district where handsome and expensive homes have been built and the record shows many of the persons who bought, or erected, homes there did so because of the building restrictions.

It is argued by appellants that the restrictions relate only to the building of the homes and place no limitation upon their use after they are once constructed in conformity with the restrictions, citing Holliday v. Sphar, 262 Ky. 45, 89 S. W. (2d) 327. In the Holliday case the covenants in the deed forbade the building of any dwelling nearer than 25 feet to the pavement line and provided the cost thereof was not to be less than $3,500. There, we held such covenants only dealt with the minimum cost of the dwellings and fixed the distance they were to be located from the street, and entirely failed to restrict the use of the property to residential

purposes. But the covenants in the deeds to lots No. 26 and No. 27 are much broader and more definite than those in the Holliday case. They limit the use of these lots to a single residence and provide the exteriors must be constructed of brick, brick veneer, concrete, stone or stucco; with a roof of tile, shingle tile, asbestos, or slate. Then follow the restrictions as to out-buildings; fences; the grade of the lots; and in the deed conveying lot No. 27 (whereon is located the house in controversy), as well as in the deeds conveying 31 other lots in this subdivision, there is a covenant that the grantor "will restrict all its other lots in said subdivision, fronting on Windsor Place for residence purposes only".

No one can read the restrictive covenants in the deeds conveying this property and escape the conclusion that it was the intention of the parties to, and they did, limit the use of the property to residential purposes. If we should accept appellant's argument that such covenants related only to the building of the homes, and placed no limitation upon their use after they were once constructed in conformity with the restrictions, then building restrictions would render the owners of property no benefit and parties incorporating such restrictive covenants in their deeds would be doing a vain thing.

We are firmly of the opinion that the covenants in the deeds conveying the lots in question limit the use of the property to residential purposes with the exception of the back part of lot No. 26 where an apartment may be built fronting on Bardstown Road, the lower floor of which may be used for offices or storerooms. Therefore, we are constrained to hold these covenants excluded the use of the residence on lot No. 27 as a funeral home, since it cannot be denied that a funeral home is a commercial enterprise. Appellants could only hope to establish a funeral home on this property in view of the action of the city zoning commission designating the corner where the property is located as lying within the commercial district. But such action by the zoning commission does not have the effect of destroying the restrictive covenants. Ludgate v. Somerville, 121 Or. 643, 256 P. 1043, 54 A. L. R. 837; Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S. W. (2d) 1024.

There was no material evidence that the building restrictions in this subdivision were ever abandoned. On the contrary, the evidence is that they have been consistently enforced. The fact that the deed to the property on the opposite side of the street permitted the erection of a doctor's or dentist's office to the rear of the residence and facing on Bardstown Road, and the fact that the deed to lot No. 26 permitted the erection of an apartment on the rear of that lot after a residence is first constructed facing Windsor Place, have no effect upon the covenants in the deeds to other property in the subdivision. Nor do they militate against the use of the houses facing Windsor Place as being solely for residential purposes. It is manifest such covenants in the deeds to lot No. 26 and to the lot just across the street from it do not constitute an abandonment of the building restrictions concerning the houses built on these lots which face Windsor Place. The fact that Mrs. Wagner's son for a few months washed cars for remuneration in her private garage on the rear of her lot does not amount to such an abandonment. Only a few of the property owners knew cars were being washed for pay in Mrs. Wagner's private garage and no complaint was made. We have held a slight or inconsequential violation of a restrictive covenant does not constitute an abandonment of building restrictions, and it does not affect the character and use of a street as a residential district. Mechling v. Dawson, 234 Ky. 318, 28 S. W. (2d) 18; Biltmore Development Co. v. Kohn, 239 Ky. 460, 39 S. W. (2d) 687. It is true that Bardstown Road has been invaded by business and is now in a commercial district, but there is no evidence that any business has encroached on Windsor Place or that the building restrictions protecting the property thereon have been abandoned or violated in any material degree. Such restrictions were properly enforced by the chancellor when he permanently enjoined Mrs. Elbrick from selling her property free from same and when he enjoined Meyer from using the property as a funeral home.

The judgment is affirmed.