## Thackray et al. v. Crager et ux.

302

*John Adams, Jr., Lemuel B. Schofield,* and *George H. Huft,* for plaintiffs.

*Earl Jay Gratz,* for defendant.

CRUMLISH, J., August 1, 1941.—Plaintiffs filed this bill in equity as property owners to enjoin defendants' use of their neighboring premises as a tourist house in violation of a restrictive covenant, binding all the properties involved, against any use other than as a private dwelling. Plaintiffs allege that defendants are advertising their premises as a tourist house by large illuminated signs in front thereof and that such use of the premises is interfering with plaintiffs' enjoyment of their property and is injuring the value thereof, for which there is no adequate remedy in damages.

Defendants deny that their property is subject to the restrictive covenant, that they are conducting their premises other than as a private dwelling, and that their use of the premises has caused any inconvenience or damage to plaintiffs' use of their property. Defendants aver that plaintiffs have abandoned the restriction and released their right therein by acquiescence in similar uses of neighboring properties and that it would be inequitable to enforce the restrictive covenant because the condition of the neighborhood has changed.

## Findings of fact

1. Plaintiffs are the respective present owners of the various properties situated on the north side of the

5900 block of Roosevelt Boulevard, Philadelphia, and acquired their respective titles on the following dates:

5900, Mulholland, December 19, 1928;

5902, Elizabeth Garlick, first acquired title on November 7, 1929, and by subsequent conveyance title became vested in Ellwood Garlick and Elizabeth Garlick, on June 9, 1939;

5904, Calvert, April 18, 1929;
5908, Iverson, May 8, 1939;
5910, Spangler, April 1, 1929;
5912, Keehfuss, December 15, 1928;
5914, Brown, April 2, 1929;
5924, Cobb, February 7, 1929;
5926, Burnett, April 20, 1937;
5930, Lister, March 3, 1937;
5932, Thackray, August 1, 1929;
5936, Fischer, December 9, 1933;
5938, Kelleher, May 17, 1939;
5940, Savoy, March 22, 1929;
5942, McKewen, January 14, 1929.

2. Defendants are the present owners of premises known as 5934 Roosevelt Boulevard, having purchased that property on October 25, 1940.

3. On August 7, 1929, George Edel was the owner in fee of a tract of land situated and described according to deed of Frank J. Bayer et al. to George Edel, dated October 26, 1927, recorded in Philadelphia in Deed Book J. M. H. no. 2648, p. 270, and that tract of land included within its boundaries the above properties presently owned by plaintiffs and defendants herein respectively.

4. On August 7, 1929, George Edel conveyed to Fred Bradford Horton by deed recorded in Philadelphia in Deed Book J. M. H. no. 3031, p. 405, a portion of the above tract of land with building thereon, now known as 5934 Roosevelt Boulevard, subject to the following restrictions:

"That no building or buildings now or hereafter erected or to be erected upon the above described lot of ground shall extend any further front than the present building as erected by the said George Edel, grantor herein, nor shall the said building or buildings hereafter erected be used for any purpose other than as a private dwelling house."

5. By divers indentures, certain lots or portions of the above tract of land, originally owned by George Edel, were conveyed in single lots to plaintiffs in fee, as fully described in finding no. 1, under and subject to the above restriction and with knowledge of its existence on the part of plaintiffs at the time of the conveyances.

6. On October 25, 1940, the premises known as 5934 Roosevelt Boulevard were conveyed by Fred Bradford Horton to defendants by deed recorded in Philadelphia in Deed Book D. W. H. no. 1079, p. 577.

7. Beginning in November 1940, defendants have conducted a tourist house on their premises, without altering the structure of the building thereon, and pursuant thereto have rented rooms to strangers by the day or for any longer period desired.

8. In conjunction with the tourist business, defendants placed upon the front of their property two pasteboard signs and two neon signs bearing the following illuminated legends, "Tourists" and "5934". The neon signs were removed following the preliminary hearing in the present case on January 3, 1941, but the two pasteboard signs remain and are illuminated by a light placed behind them.

9. Further in conjunction with defendants' tourist business, people have been going in and out of their premises at all hours of the day and night with baggage, and cars have been parked in the front and in the rear of the premises on the private driveway, bearing out-of-State license plates.

10. For more than nine years, William D. and Anna

L. Moore have been conducting a tourist house on their premises 5916 Roosevelt Boulevard, in the same manner as defendants herein, as described above, without any objection from plaintiffs.

11. All the properties on the north and south sides of the 5900 block are private dwellings, except as otherwise indicated in these findings.

12. The presence of tourist houses in the close vicinity of plaintiffs' properties has tended to depreciate the value and to interfere with plaintiffs' full enjoyment thereof.

13. On the south side of the 5900 block of Roosevelt Boulevard, to which the above restriction also applies, at 5903, 5919, and 5927, tourist houses have been conducted for many years in the same manner as defendants herein, as described above.

14. Defendants knew of the existence of the above tourist houses on the north and south sides when they purchased their property.

15. Roosevelt Boulevard at the 5900 block is 300 feet wide and consists of four driveways, each separated by a grass lawn from which trees are growing.

16. Of twenty-one commercial establishments in the neighborhood in question, one group is centered around Oxford Circle on the Roosevelt Boulevard about one half block from the western end of the 5900 block, a distance of approximately 500 feet, and the other is situated off the boulevard on Castor Road at a walking distance of almost two blocks behind the 5900 row. Most of these commercial properties have been used as such for more than five years, and many were business properties prior to the creation of the restrictive covenant as to the 5900 block.

## Discussion

The facts material to the issues presented herein are for the most part not in dispute, and the evidence clearly supports the above findings.

There is little doubt that the restrictive covenant was included in the line of title through which defendants acquired their property and that it may be enforced against them by subsequent grantees of other properties subject to the same restrictions, as a covenant running with the land: Adams et al. v. Field et al., 297 Pa. 247 (1929); Finley v. Glenn et ux., 303 Pa. 131 (1931); Benner et al. v. Tacony Athletic Assn. et al., 328 Pa. 577 (1938). Therefore, the first question is whether defendants' use of their property as a tourist house as described herein violates the restriction of the use of the property to a "private dwelling". The answer is clear that it does.

In the leading case of Taylor et al. v. Lambert, 279 Pa. 514, 516 (1924), the proper construction of "a private dwelling" was clearly stated as follows:

"But the words 'private dwelling house' have a much more restricted meaning than that attributed to 'dwelling house' or 'one single dwelling' in the prior cases. Their use not only exclude tenements or buildings erected and operated as a business venture, having many of the characteristics of a hotel, such as an apartment house, but there is a well defined difference between an apartment house, operated by the owner for profit through leasing different stories or suites of rooms, and a dwelling intended and calculated to be for the sole and exclusive occupancy of one family, suitably constructed for that purpose. In the term 'a private dwelling', the word 'dwelling' restricts the character of building by eliminating all buildings for business purposes, such as stores, livery stables, garages, factories, and the like. The word 'private' further restricts the buildings to be placed thereon by excluding all such as are used for residential purposes of a public character, like hotels and general public boarding or apartment houses . . .

"Such restriction is violated by the use of a building on the premises as a public boarding house. . . ."

See also Pocono Manor Assn. et al. v. Allen et al., 337 Pa. 442 (1940), and Fox et al. v. Sumerson et al., 338 Pa. 545 (1940). That the use of a single dwelling as a tourist house violates the restriction in question was squarely decided in Miller v. Gross, 18 Leh. L. J. 55, 60 (1938), wherein it was stated:

"An invitation to the general traveling public to the facilities of the home for hire certainly deprives a residence of its designation as a 'private residence'. It comes closer to being a hotel or public boarding house, both held by the Taylor case to be in violation of such a restriction."

See also Douglass v. Queeney, Jr., et ux., 109 Pa. Superior Ct. 336 (1933). A similar result was reached in Deitrick v. Leadbetter et al., 175 Va. 170, 8 S. E. (2d) 276 (1940), noted in 127 A. L. R. 849.

Defendants contend, however, that such violation of the restriction has been waived by plaintiffs. But, "It is only when violations are permitted to such an extent as to indicate that the entire restrictive plan has been abandoned that objection to further violations is barred. Nor will indulgence work a waiver or estoppel against the enforcement of restrictions which are distinct and separate from those previously violated: *Lattimer v. Livermore*, 72 N. Y. 174, 180; *Cuneo v. Chicago Title & Trust Co.*, 337 Ill. 589, 169 N. E. 760, 763, 764; *Polk Manor Co. v. Manton*, 274 Mich. 539, 265 N. W. 457, 458, 459": Benner et al. v. Tacony Athletic Assn. et al., supra, p. 581.

The time elapsing between the commencement of defendants' use and this suit presents no problem of waiver or laches. Plaintiffs acted promptly under the circumstances. Also, the toleration of violations by others cannot operate as a waiver of defendants' violation unless the entire restrictive plan has been abandoned. This has clearly not been done. Only one tourist house appeared on the north side of the boulevard be-

fore defendants arrived, and only three on the south side, a total of four out of approximately forty-four houses. We cannot describe such a situation as an abandonment of the entire residential plan. The fact that relief against these four tourist houses may not be available to plaintiffs because of their long existence without objection does not help defendants' case. Plaintiffs have the right to prevent further intrusions upon the plan in the absence of proof of abandonment.

Finally, defendants contend that it would be inequitable to enforce the restrictive covenant because the character of the neighborhood has drastically changed. However, the proof showed that the tract of land originally covered by the restriction is still entirely residential with the exception of the tourist houses. The commercial properties referred to in the testimony have been used as such for over five years, many even prior to the creation of the restrictive covenant. They are grouped in two sections, one at the Oxford Circle, one half block from the western end of the 5900 row, and the other on Castor Road almost two blocks walking distance from the eastern end of the 5900 row. The remaining properties throughout the neighborhood are almost entirely residential, and the character of the neighborhood cannot be said to have changed with the development of two small isolated business sections therein, as long as they are surrounded exclusively by private dwellings. See Benner et al. v. Tacony Athletic Assn. et al., supra, and Hunter v. Wood, 277 Pa. 150 (1923). Furthermore, it was shown that the particular violations contested herein have tended to depreciate the value of plaintiffs' properties. It is well settled that "Notwithstanding a change of neighborhood conditions, equity will restrain violations of a restrictive covenant so long as it remains of substantial value to the owner of the dominant estate: *Landell v. Hamilton*, 175 Pa. 327, 337; *Phillips v. Donaldson*, 269 Pa. 244, 249, 250, 251; *Hunter v.*

*Wood,* 277 Pa. 150, 152"; Benner et al. v. Tacony Athletic Assn. et al., supra, p. 581; Todd et al. v. Sablosky et al., 339 Pa. 504, 508 (1940). See Miller v. Gross, supra, p. 61.

Therefore, the relief prayed for will be granted.

## Conclusions of law

1. Plaintiffs have proved a cause of action entitling them to the equitable relief prayed for.

2. The restrictive covenant quoted herein applies to defendants' property in favor of plaintiffs.

3. Defendants' use of their property as a tourist house in the manner described above is a violation of the restrictive covenant that their property shall be used only as a private dwelling.

4. Plaintiffs in no way waived or released any such violations by defendants.

5. Plaintiffs' indulgence of similar violations as described herein is not sufficient to constitute an abandonment of the restrictive plan.

6. The character of the neighborhood surrounding the properties in question has not been shown to have changed to the extent that the restrictive covenant is no longer of value to the dominant owner.

## Decree nisi

And now, August 1, 1941, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

1. Joseph K. Crager and Mary E. Crager are hereby enjoined from conducting their premises, 5934 Roosevelt Boulevard, Philadelphia, Pa., as a tourist house and from using said premises for any purpose other than as a private dwelling.

2. Joseph K. Crager and Mary E. Crager are hereby directed forthwith to remove and hereafter to refrain from erecting all signs or other objects indicating or advertising the operation of a tourist house or any other business at said premises.

3. Defendants shall pay the costs of these proceedings.

The prothonotary will enter this decree nisi and give notice to the parties, or their counsel of record, of the entry of the decree, and, if no exceptions thereto are filed within 10 days thereafter, the decree nisi shall be entered as the final decree, by the prothonotary, as of course.