## Dorsey v. Fishermen's Wharf Realty Co.

October 14, 1947.

Rehearing denied February 13, 1948.

W. Scott Miller, Judge.

Jos. J. Kaplan for appellant.

Lawrence S. Grauman for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Hollywood Subdivision, in Louisville, was created in 1921 by Ada Shippen. Lots 1 to 10 face Hollywood Terrace. Most of these lots have a frontage of 50 feet and a depth of 110 feet. Lots 11 to 14 face Shippen Road. Lots 15 to 21 face Brownsboro Road. These lots have frontages ranging from 100 to 145 feet, with an average depth in excess of 300 feet. The deeds to Lots 1 through 9, most of which were executed prior to the time the deeds were executed to lots 15 to 21, contained the following restrictions:

"(1) The property herein conveyed shall never become the property of a person of African descent.

"(2) No building shall be placed nearer than 25 feet from Shippen Ave., and nearer than 10 feet from Hollywood Terrace.

"(3) Cost of dwelling over and above cost of lot shall not be less than $3500.00 and all outbuildings shall be under 1 roof and of style and cost to compare with main dwelling.

"(4) The property herein conveyed shall never be used for other than residential purposes."

No restrictions were included in the deed to Lot 10. The deed to Lot 15, which is a corner lot facing on Brownsboro Road and Aubin Avenue, was executed in 1922 to Mr. and Mrs. Herman R. Moore. It contained the following restrictions:

"(1) That no part of the said lot and no interest therein shall ever become the property of a person of African descent.

"(2) That no building shall be placed on the same nearer than 100 feet to Brownsboro Road, nor nearer than 10 feet to Hollywood Terrace.

"(3) That only one dwelling house shall be placed on the same (except servants' quarters), and that the cost thereof, over and above the cost of the lot shall be not less than $6,000.00, and that the exterior construction thereof shall be of stone, brick, log, concrete or stucco, with slate, tile, asbestos shingle, or asphalt shingle roof.

"(4) That all outbuildings to be placed on the same shall stand under one roof including servants' quarters."

No restrictions were included in the deed executed by the Moores to the appellee in 1946. With possibly one exception, all of the deeds to the remaining lots facing on Brownsboro Road contained restrictions similar to those pertaining to Lot 15. When the appellee made known its intention to erect a filling station on Lot 15 the appellant, Mrs. Minnie Dorsey, who owns a residence located on Lot 16, instituted this action to have construed the restrictive provisions pertaining to Lot 15.

The contention of the appellee is that it has a right to use Lot 15 for business and commercial purposes, while the appellant contends that the lot can be used for "only one dwelling house." The appeal is from a judgment upholding the contention of the appellee.

The appellee places much stress upon the last restriction included in the deeds to Lots 1 to 9 which reads: "The property herein conveyed shall never be used for other than residential purposes."

A very forceful argument is advanced to the effect that had Mrs. Shippen intended that Lots 15 to 21 be used only for residential purposes, she had only to use the wording incorporated in the deeds to the smaller lots. Emphasis is also placed upon the fact that the deeds to most of the smaller lots were executed prior to those to the larger lots. On the other hand, Mrs. Dorsey contends that the tenor of the deeds to practically all the lots in the Subdivision is to the effect that Mrs. Shippen intended that the Hollywood Subdivision be only a residential section. In this respect it is significant that no question has been raised, insofar as this record shows, relative to the construction of buildings other than residences in the Subdivision until the appellee acquired Lot 15. It is further contended for Mrs. Dorsey that the restriction that only one dwelling house (except servants' quarters) shall be placed upon Lot 15 means that no building other than a dwelling can be erected on the lot. In support of this argument several definitions of the word "only" are cited, and also emphasis is placed upon the fact that, coupled with the

"one dwelling house" restriction, there are provisions relating to the cost of the dwelling and the type of materials to be used in its construction. Indeed it can be seen that all of these provisions are included in the same sentence styled Item 3.

The appellee relies primarily upon the case of Holliday v. Sphar, 262 Ky. 45, 89 S. W. 2d 327, 328. The restriction dealt with in that case provided that: "No dwelling house shall be built in any part of said addition, when laid off into streets, lots and alleys, closer than 25 feet to the pavement line, and no residence shall be built on Boone avenue or Belmont street, which is now known as the Colbyville Pike, costing less than thirty-five hundred ($3,500.00) dollars, and no part of the property herein sold shall ever be sold or leased to any person of African descent. In the Holliday case we held' that, since the restrictions related only to the minimum costs of residences and to building lines, the use of the lots in the subdivision was not restricted solely to residential purposes, but would permit the construction of a gasoline service station.

The appellant relies principally upon the case of Meyer v. Stein, 284 Ky. 497, 145 S. W. 2d 105. In the Meyer case question was raised as to whether or not a house on Lot 27 and Lot 26 in Windsor Place in Louisville could be used for a funeral home. The restrictive provision as to the use of the lots was that the property "shall be used only for the erection of a single residence and no residence shall be erected thereon that shall cost less than $5000." There were also included in the restrictions provisions as to the type of materials to be used in the construction of the buildings and also relating to outbuildings and fences. We distinguished the restrictions in the Meyer case from those in the Holliday case by saying that they were much broader and limited the use of the property to residential purposes. It was pointed out in the opinion that the restrictions in the Holliday case related only to the minimum cost of dwellings and to building lines and did not restrict the use of the property to residential purposes. Obviously, there is a basis for drawing a distinction between the restrictions involved in the Holliday and Meyer cases. Those involved in the case at bar are more specific than those involved in the Holliday case, but are

less specific than those involved in the Meyer case. While we do not feel called upon to overrule the Holliday case at this time, we may say in passing that we now entertain some doubt as to the correctness of that ruling. A careful analysis of the wording of the restrictions pertaining to Lot 15, coupled with a consideration of all the facts and circumstances pertaining to the establishment of the Hollywood Subdivision, which have been noted heretofore, leads us to the conclusion that the chancellor erred in holding that a commercial building may be erected on Lot 15. We think it was intended that all of the lots in the Subdivision be used for residential purposes and that the words "only one dwelling (except servants' quarters)" meant that only a dwelling house could be constructed on any of the lots in the Subdivision.

In reaching the conclusion just stated we are not unmindful of the fact that it was pointed out in the Holliday case that restrictive covenants will be strictly construed against those seeking to enforce them. Reasonable building restrictions have been uniformly enforced by the courts and are given the effect intended by the parties as gathered from the conveyance in the light of surrounding circumstances. Meyer v. Stein, supra. We think the restrictions involved in the case at bar are reasonable and we believe we have given them the effect intended by the parties. As a general proposition it may be said that, when building restrictions first came into use, they were looked upon as restrictions against the individual owner of property and were scrutinized carefully to avoid the untrammeled use of real property. In recent years, however, they have come into rather general use in metropolitan areas and are looked upon more in the nature of a protection to the property owner and the public rather than a restriction as to the use of property. Zoning ordinances have followed in logical sequence.

For the reasons given we think the judgment should be and it is reversed, with directions that it be set aside and for the entry of a judgment in conformity with this opinion.