**Ray A. PARRISH et al., Appellants,**

v.

**Edward L. NEWBURY et al., Appellees.**

Court of Appeals of Kentucky.

May 13, 1955.

Robt. F. Houlihan, Stoll, Keenon & Park, Stanley M. Saunier, Gess, Mattingly, Saunier & Atchison, Lexington, for appellants.

Harry B. Miller, Jr., Lexington, for appellees.

STANLEY, Commissioner.

The case presents a question of restrictions on the character of structures or use of several lots by designation on a plat of a real estate subdivision, coupled with certain general provisions of uniform deeds executed by the subdivider and grantor.

In May, 1947, Mrs. Laura K. Walton, owner, and her husband, Samuel B. Walton, as agent, had recorded in the county court clerk's office a plat of the "Elkhorn Parks Subdivision" near Lexington. It contained 14 blocks of lots among avenues and small parks. Published on the plat was the following table headed "Key":

|  |  | "Key |  |  |
|---|---|---|---|---|
| Block No. | 1 | Commercial |  |  |
| Block No. | 2 | Business |  |  |
| Block No. | 3 | Apartments | 10 | Lots |
| Block No. | 4 | Gardens |  |  |
| Block No. | 5 | Residential | 21 | Lots |
| Block No. | 6 | " | " 41 | Lots |
| Block No. | 7 | " | " 13 | Lots |
| Block No. | 8 | " | " 28 | Lots |
| Block No. | 9 | " | " 25 | Lots |
| Block No. | 10 | " | " 19 | Lots |
| Block No. | 11 | " | " 22 | Lots |
| Block No. | 12 | " | " 9 | Lots |
| Block No. | 13 | " | " 15 | Lots |
| Block No. | 14 | Residential | 10 | Lots" |

The plat was used in the advertisements for the initial sales of the lots. Block No. 3, designated as being for "Apartments", is separated from the rest of the subdivision by Northern Parkway, now a four-lane highway. Railroad tracks run on the south side of the block. Block No. 2, designated "Business", adjoins Block No. 3 on the south and is at the intersection of Northern Parkway and the recently improved and much traveled Belt Line, a by-pass of the city, where there is a filling station.

Recently, Mrs. Walton, the original subdivider of the plot, who has continued to own Block No. 3, contracted to sell it to Ray Parrish for the purpose of erecting a motel on it. Objection by other lot owners precipitated this declaratory judgment suit to have determined the validity and effectiveness of the "Key" designation on the plat, coupled with provisions in the uniform deeds theretofore executed, as a restrictive covenant and a bar of the motel.

■ In the latter part of 1951 the then owners of a substantial portion of Block No. 2 began the erection of a large motel which overlapped onto lot No. 10 in Block No. 3, one of those designated by the "Key" on the plat as being for apartments. When attention was called to this fact, all the lot owners in the subdivision agreed in writing to a modification of the plat so as to permit completion of this motel. They testified they did so in order to save the builder considerable loss since the structure was almost completed. We do not regard this special waiver as of legal significance or an estoppel to the present objections. 14 Am.Jur., Covenants, Sec. 294.

The circuit court was of opinion this subdivision was laid out as a residential community; that the owners had purchased their property in reliance thereon and that it would be a violation of a restrictive covenant to erect the proposed motel. A declaratory judgment was entered in accordance with the opinion.

The appellants, Parrish and Mrs. Walton, contend that the "Key" on the plat cannot alone be regarded as constituting restrictive covenants, and that the conditions in the printed form of the deeds to other purchasers of the lots do not necessarily have to be applied to the conveyance of lots in Block No. 3. The appellees, of course, take the contrary position.

■ We have recognized that building restrictions or anything else properly written upon a recordable plat become part of it and constitute constructive public notice. Seat v. Louisville and Jefferson County Land Co., 219 Ky. 418, 293 S.W. 986, 988.

In that case there was a statement on a plat describing and dedicating a public street and stating the frontage on it " 'shall be used for dwelling house sites' " and that " 'lot owners whose property binds on this road are permitted to erect a dwelling thereon facing this avenue.' " We construed this as meaning the location of a dwelling house and to exclude a garage or other building erected for any other use than a dwelling house.

■ But restrictions placed upon the use of property by merely marking or designating them on the plat are not looked upon with favor. Generally, the effect of such indications or statements depends upon the facts in the particular case. Lines on a plat or map may effectively establish streets, alleys, parks and building lines when they are definite and specific, but if there is a different or qualifying provision in a conveyance of the property, such provision must prevail. Such endorsements cannot be held to create or establish a restriction on the use of the property by implication. To be effective, they must be clear and specific and constitute a grant or covenant by the reference. 14 Am.Jur., Covenants, Conditions and Restrictions, Sec. 203; Vittitow v. Dodson, 302 Ky. 418, 194 S.W.2d 996; Cassell v. Reeves, Ky., 265 S.W.2d 801; Stanley v. Greenfield, 207 Ga. 390, 61 S.E.2d 818, 21 A.L.R.2d 1256. This cryptic endorsement on the plat was intended to mean something, and that something was at least to show the plan and purpose of the development. It may have been to merely indicate reservation for the several purposes. The real question is whether the "Key" is sufficient to constitute a restrictive covenant.

However, as we have indicated, the appellants do not rely alone upon the insufficiency and indefiniteness of the "Key" but upon the terms of the conveyances to the appellees.

The printed form of the deeds executed to the appellees describes the property severally by lot and block number as shown on the recorded map or plat "to which said plat or map reference is hereby made." Each deed

contained this provision: "This conveyance is made subject to the following terms, conditions, easements and restrictions, to-wit:" Then follow fifteen paragraphs, lettered from "A" to "O", which contain them in extensive detail. Paragraph "A" reads, in part, "No house erected upon the within granted premises or any part thereof shall be used for other than single family residence purposes." This is inconsistent with the use of the lots in controversy for apartment houses, and would not, of course, apply to Blocks 1, 2 or 3. The rest of that paragraph and others from "B" to "K" cover, generally, the character and size of the buildings, how they shall face, cost, etc. They indicate that all are to be dwelling houses. Some of the paragraphs contain blank spaces for the filling in of specific locations of buildings.

Paragraph "L" reads as follows: "The Grantors are not obligated to make any of the foregoing restrictive terms or conditions apply to any of the lots in Blocks 1, 2, and 4 of said subdivision." It is to be observed that this paragraph "L" does not include Block 3, being that part of the subdivision designated by the "Key" for apartments. The appellants argue that by this omission the subdivider of the property, as grantor, did not obligate herself to include these terms and restrictions in the conveyance of lots in Block 3, and that purchasers of the other lots cannot require that it be done. This argument overlooks the effect of the maxim that the expression of one thing is or implies the exclusion of another (expressio unius est exclusio alterius), often used as an aid in arriving at the intention of the parties to a contract. Under this rule it is logical to suppose that in failing to except the restrictive provisions from Block 3, the intention was to have those conditions apply to that block, and yet "single family residence purposes" would not be applicable. The appellant also points out that the necessity of filling in blank spaces for the conveyance of each lot constituted inconsistency and variableness in the conditions and that it is impractical to impose some of those terms upon all the property in the subdivision. It does seem impractical to apply all of them to all of the

lots. But it will be time enough to determine the effect of all this when a case is presented involving the different items. We are concerned in this case only as regards the use of the lots in Block 3 for a purpose other than apartments. "Apartments", in this relation, has a well-known meaning as a type of plural residences. See Koett v. Tate, 248 Ky. 135, 53 S.W.2d 374; Anderson v. Henslee, 226 Ky. 465, 11 S.W.2d 154; Biltmore Development Co. v. Kohn, 239 Ky. 460, 39 S.W.2d 687; Annotation, "Multiple residence as violation of restrictive covenant", 14 A.L.R.2d 1376. A "motel" cannot be regarded as an apartment house. It is a modern development of an inn or hotel; and serves transients. See Langford v. Vandaveer, Ky., 254 S.W.2d 498.

We must agree with the appellants that the so-called "Key" on the plat and the restrictive provisions in the appellees' several deeds are indefinite, unclear and doubtful in meaning. We have often recognized that since restrictions are in derogation of the free and untrammeled use of real property, they are to be strictly construed with doubts resolved against them. They will not be enlarged by implication or extended to embrace something not plainly prohibited. Holliday v. Sphar, 262 Ky. 45, 89 S.W.2d 327; Glenmore Distilleries Co. v. Fiorella, 273 Ky. 549, 117 S.W.2d 173; Vittitow v. Dodson, 302 Ky. 418, 194 S.W.2d 996; Dorsey v. Fishermen's Wharf Realty Co., 306 Ky. 445, 207 S.W.2d 565.

Notwithstanding these general rules, always, as a fundamental and supreme rule of construction of contracts, the intention of the parties governs. That intention in respect to a restrictive covenant is to be gathered from the entire context of the instruments. McFarland v. Hanley, Ky., 258 S.W.2d 3. Often the surrounding circumstances and the object which the covenant was designed to accomplish, which may be revealed in part by a general scheme or plan of development, are important considerations where the meaning is doubtful. Bennett v. Consolidated Realty Co., 226 Ky. 747, 11 S.W.2d 910, 61 A.L.R. 453; Biltmore Development Co. v. Kohn, 239 Ky. 460, 39 S.W.2d 687; Greer v. Bornstein,

246 Ky. 286, 54 S.W.2d 927; Connor v. Clemons, 308 Ky. 9, 213 S.W.2d 438; McFarland v. Hanley, Ky., 258 S.W.2d 3; Bagvy. v. Stewart's Ex'r, Ky., 265 S.W.2d 75. We agree with the chancellor that the intention and purpose here was to establish a residential subdivision, with only two blocks located at the intersection of the two main highways being set apart for "Commercial" and "business" purposes. But the question is whether the apparent attempt to impose legal restrictions was legally sufficient to accomplish the intention and purpose.

■■■ On one side we have the cryptic "Key", or table and designation on the plat and the ambiguous terms of the deeds executed to the purchasers of the lots, and on the other side of the question, the general scheme and plan of development. The conflict raises a doubt as to the legal efficacy of the apparent restriction.

■■■ In resolving the controversy, it is to be borne in mind that we have the unusual case of the party who placed the restrictions on the use of the several lots as covenantor now trying to avoid them because of indefiniteness and ambiguity. These terms, conditions and restrictions were put on the plat and in the appellees' deeds for their benefit, McFarland v. Hanley, Ky., 258 S.W.2d 3, and not solely for the benefit of the grantor. They cannot be ignored by her in the subsequent sale of other lots. Ambiguous restrictions, like provisions in other written instruments, must be construed most strongly against the person who created them. 17 C.J.S., Contracts, § 586; 21 C.J.S., Covenants, §§ 20, 29. There is another ancient maxim to the effect that an ambiguous sale contract ought to be construed against the seller, Ambiguum pactum contra venditorem interpretandum est, and others of like effect, that an ambiguous statement is to be construed against him who makes it.

■■■ This guide to construction of the phraseology and meaning must prevail. The evidence is that the appellees bought their lots in reliance upon the statements on the recorded plat that Block 3 should be

for apartment houses, that is, for multiple residences. This court long ago held that one who platted a parcel of land into lots and streets and sold lots by reference to the plat will not be permitted against objection of lot owners to change the streets or other public places so described or designated. Rowan's Ex'rs v. Town of Portland, 8 B.Mon. 232, 47 Ky. 232. The recent case of Cassell v. Reeves, Ky., 265 S.W.2d 801, confirms the stability of such dedications. This is in accord with the general conception of equity. Herold v. Columbia Investment & Real Estate Co., 72 N.J.Eq. 857, 67 A. 607, 14 L.R.A.,N.S., 1067. As an original developer may not change the streets and parks he dedicated to the use of all who acquired and own the lots in the developments, by parity of reasoning and right we think it should be held that after the sale of lots, the original developers may not change the general scheme and plan of the development, even though it be indefinitely or ambiguously expressed in certain particulars, without the acquiesence of the owners of the lots. Menstell v. Johnson, 125 Or. 150, 262 P. 853, 266 P. 891, 57 A.L.R. 311; 14 Am.Jur., Covenants, Sec. 291.

The appellants further submit that it is inequitable to enforce the limitation on the use of the property to apartment houses exclusively even if such use had been originally intended.

They proved that Block 3 is not suitable for residential purposes because of its separation from the other part of the subdivision by the four-lane highway, and because it lies between that thoroughfare and the railroad tracks; also, that the erection of the motel or other business buildings would not intimately affect the residential portion.

■■■ The City and County Planning and Zoning Board has rezoned these lots from "Residence 1" to "Business 3" to permit the erection of the proposed motel. The minutes of the Board recite that this was done because the area "is adjacent to an existing Business 3 district and with [sic] being sandwiched in between the railroad and the highway is not at all suitable for

residential development." Upon these facts, together with some surrounding business development, the appellants seek relief under the rule that a fundamental change in the neighborhood or conditions terminates a restrictive covenant since such change defeats its purpose.

 The area was laid out and developed only in the past eight years. It seems to us the following analysis of the situation and reasoning of the trial court are right, viz.:

> "In this case there has been no substantial transformation of the district from what it was when the original plat was recorded in 1947 to what it is today. The railroad was there then; the road was there then; the business areas were provided for; and the residences which have been constructed there were erected in accordance with the terms of the plat and the deeds; the property is substantially the same as it was in 1947, and as the owners who laid out the subdivision contemplated it would be. The plan as outlined by the deeds and plat may not have been the one which would have been adopted by some zoning experts. It may not have been the plan which was most beneficial to the owners of the subdivision, but it was the one they adopted; the one they advertised; the one they recorded; the one they held out to the public and the prospective purchasers; the one the purchasers relied upon when they purchased their lots. There has been no proof offered to show such a change of conditions as would justify a release of the restrictions."

These conditions are not comparable to those in Goodwin Brothers v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024, which were held to have authorized a termination of restrictive covenants concerning residences.

 The mere fact that removal of restrictive covenants would greatly enhance the value of the land will not justify their removal. 21 C.J.S., Covenants, § 5. And the action of the planning and zoning commission cannot be held to relieve the land from the covenant for it is a mutual and reciprocal contract. Meyer v. Stein, 284 Ky. 497, 145 S.W.2d 105; City of Richlawn v. McMakin, 313 Ky. 265, 230 S.W.2d 902, certiorari dismissed 340 U.S. 945, 71 S.Ct. 531, 95 L.Ed. 682; Ashland-Boyd County City-County Health Dept. v. Riggs, Ky., 252 S.W.2d 922; 8 McQuillen, Municipal Corporations, Sec. 25.09.

We are of opinion, therefore, that the declaratory judgment is correct. Judgment affirmed.