**Mary S. ROBBINS, Appellant,**

v.

**Nettie E. CORNELL et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 14, 1958.

Woodward, Hobson & Fulton, A. Singleton Cagle, Louisville, for appellant.

Wilbur Fields, Louisville, for appellees.

SIMS, Judge.

This is an appeal from a judgment of the Jefferson Chancery Court, Second Division, holding that certain building restrictions on lots in Kenilworth Subdivision in the city of Louisville had not been waived, nor had the character of the subdivision so changed as to render the restrictions unenforceable as to lots facing Kenilworth Place. The court refused to pass on an issue raised in the counterclaim wherein defendants sought by mandatory injunction to require plaintiff to remove certain billboards erected on the rear of her lot abutting Bardstown Road. There is no cross-appeal.

There is practically no dispute as to the facts, many of which were stipulated. The subdivision was opened in 1907 and a plat of it was filed in the county court clerk's office showing it runs from Speed Avenue southeastwardly to Grassmere Drive and includes the east side of Bardstown Road between the 1800 and 1900 block and all lots in Kenilworth Place. Plaintiff's property is on the northeast corner of Bardstown Road and Kenilworth Place, fronting 70 feet on Kenilworth Place and running back 150 feet on Bardstown Road. Her house faces Kenilworth Place.

Most of the deeds to the lots in the subdivision were executed in 1907 and the grantees bound themselves, their heirs and assigns to erect residences of two and a half stories, costing at least $3,000, and those fronting on Kenilworth Place to be set back 30 feet from the front property line. Outbuildings can be erected which may be necessary for the use and enjoyment of the residences. There is a provision that the grantees will not sell or rent to persons of African descent, nor permit the property to be used for the sale of liquor for a period of fifty years.

In 1925 plaintiff's predecessor in title was permanently enjoined from building a store-

house on the rear of his lot because it would violate the restrictions placed upon the property. At the present time all the property in the subdivision bordering Bardstown Road has been zoned for commercial use by the Jefferson County Planning and Zoning Commission. Neither side in this litigation contends the zoning ordinance has any effect on the building restrictions contained in the deeds because they both realize that would impair contractural obligations. City of Richlawn v. McMakin, 313 Ky. 265, 230 S.W.2d 902.

Plaintiff, Mrs. Robbins, has a contract with Ky-Am Oil Company to lease her property for the purpose of the company erecting and operating a filling station thereon for which it will pay her $3,000 a year rent for 15 years, and at the expiration of the lease will purchase the property for $50,000. This contract is dependent upon plaintiff getting her property relieved from the restrictive covenants. She brought this declaratory judgment action against the owners of the lots in Kenilworth Place, who answered and set up their objections to the proposed use of plaintiff's property as a violation of the restrictive covenants. Because the case was not developed on the question of whether the injunction in 1925 was still in effect and whether under it plaintiff can be forced to remove the billboards along the rear of her lot, the trial judge did not pass on the point; therefore we will not.

Plaintiff insists the conditions in the neighborhood of her property have so changed as to render the restrictive covenants useless and unenforceable. She further contends that defendant property owners in the Kenilworth Subdivision have for years permitted some of the homes therein to be diverted to business purposes, hence they have waived their right to object to her proposed use of her property. It is manifest this requires a review of the facts shown in the record.

We are not concerned with the west side of Bardstown Road (which appears to be all commercial) as that is not within the Kenilworth Subdivision. It is only the east side of Bardstown Road that lies in the subdivision and is subject to the restrictions above mentioned.

The record shows these commercial uses on the east side of Bardstown Road. At No. 1829, and just to the rear of plaintiff's property and right across an alley is the Highland Roofing Company's office and its workshop. Plaintiff testified the noise and dirt from this shop makes her home unfit for a residence.

At No. 1825 is "Speed Around The Clock," a delicatessen and restaurant, which can seat 100 people and is open seven days a week from 10:00 A.M., to 12:00 midnight. It has been there since 1945 and the building housing it was originally occupied by Steiden Stores some 18 years ago. Above this establishment is a large neon sign.

At No. 1827 is a photograph shop with a sign, "Portraits by Patricia." This shop is in the first floor of a building which was formerly a residence.

At No. 1901 is "Recovery, Inc.," an organization devoted to assisting people with mental problems. It is in the ground floor of a building formerly used as a garage and the second floor is used as a residence.

At No. 1903 there is an apartment building in which a dentist has an office in the basement.

At No. 1905 is the "Merriweather Gift Shop," with show windows, which has been at this location for 15 years.

At the corner of Bardstown Road and Grassmere Drive there is a real estate office with a sign at its entrance.

The entrance to Kenilworth Place is imposing looking with four stone columns, two on each side. There are no businesses operated in Kenilworth Place, which contains nothing but rather nice middle-class

residences and the restrictive covenants have been strictly complied with therein. As stated above, plaintiff's property is at the corner of Kenilworth Place and Bardstown Road with her house facing on Kenilworth Place, and she has owned this property for about 20 years. Many photographs filed in the record by both sides give us a clear conception of what the changed conditions are in the subdivision and their relation to plaintiff's property.

Defendants' testimony is to the effect they did not oppose the conversion of the east side of Bardstown Road to commercial uses because the west side thereof was already commercial; furthermore, they could not devote the time and incur the expense necessary to make a continuous court fight. Then too, what was done on Bardstown Road did not affect their property in Kenilworth Place.

■ We agree with the trial judge who wrote in his opinion that when the property owners in Kenilworth Place instituted the injunction suit in 1925 and prevented plaintiff's predecessor in title from erecting a storehouse on the Bardstown Road side of the lot she now owns, this shows they did not waive the restrictions. When business began to encroach upon Kenilworth Place they were ready to resist it 30 years ago, just as they are now. Defendants are estopped to oppose commercial uses now existing on the east side of Bardstown Road as they have waived their right to object thereto by remaining quiet all the years these changes have come about. But this does not estop them from opposing a wholly commercial use, like a filling station, on a lot cornering with Kenilworth Place, which will be detrimental to their property. Polk Manor Co. v. Manton, 274 Mich. 539, 265 N.W. 457. If this filling station is erected on plaintiff's lot, it means an encroachment of business in Kenilworth Place and it will no longer be regarded as exclusively residential.

■ The general rule is that change of conditions will justify the court to relieve property from restrictive covenants when such change is so great as clearly to neutralize the benefit of the restrictions and to defeat the purpose of the covenant. Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024; Franklin v. Moats, Ky., 273 S.W.2d 812, and authorities cited in those opinions.

■ In the instant case the record shows no change of conditions in Kenilworth Place, but that the change has all taken place along the east side of Bardstown Road (the west side of which is all commercial). True, plaintiff's lot corners at Kenilworth Place and Bardstown Road, but her house faces Kenilworth Place and a filling station on this corner will be as much in Kenilworth Place as it will be on Bardstown Road.

As was written in the Moats opinion, there is always a line or point where commercial and residential districts must join each other. Here, that line or point is at Bardstown Road and Kenilworth Place, and commercial use has not yet left Bardstown Road and entered Kenilworth Place. So far as Kenilworth Place is concerned there has been no change of conditions, but if plaintiff is allowed to erect a filling station on her lot, then there will be a change of conditions in Kenilworth Place. Like the trial judge, we have considered the fact that all property abutting Bardstown Road has been zoned for commercial use, but such zoning is only one of the considerations and is not controlling here.

■■ We are in full accord with Bagby v. Stewart's Ex'r, Ky., 265 S.W.2d 75, cited by plaintiff, that the right to enforce a restrictive covenant may be lost by waiver or abandonment. Also, a general change of conditions in the neighborhood to which the covenants apply may prevent their enforcement. But the facts in the instant case distinguish it from the Bagby opinion. Here, there was no waiver or

abandonment by defendants, nor did the change of conditions on the east side of Bardstown Road affect the property in Kenilworth Place.

We are in full accord with the views so well expressed in the opinion of the trial judge and his judgment is affirmed.