**George I. GATES et al., Appellants,**

v.

**Edward B. STRUBE et al., Appellees.**

Court of Appeals of Kentucky.

June 9, 1967.

Ewing L. Hardy, Jr., Thomas E. Gates, Louisville, for appellants.

Stuart A. Handmaker, Kenneth S. Handmaker, Louisville, for appellees.

MILLIKEN, Judge.

Heavily traveled Bardstown Road slants across the end of Windsor Place, one of the two entrances to Louisville's Windsor Place Subdivision, creating odd shaped corner lots, No. 1 and No. 26, at the intersection. The Subdivision's forty-five other lots are oblongs fronting on Windsor Place. The appellees are the owners of corner lot No. 26 and its adjoining lot, No. 27 on which their home is located. Bardstown Road has been zoned, Commercial, since 1935 to a depth of three lots into the Windsor Place Subdivision, and the elderly appellees seek to free their side yard, corner lot No. 26, from subdivision restrictions imposed a half century ago, which limit its use to residential purposes. The question on this appeal is whether the trial court was justified in rejecting the protests of appellants, representative owners in the Subdivision, and granting the appellees the relief they prayed.

Unimproved corner lot No. 26 fronts 63.12 feet on Windsor Place and runs along Bardstown Road 150.41 feet to an alley. Windsor Place Subdivision was started in 1910. Lot No. 27 and 10 feet of lot No. 26 were conveyed to R. L. Woodard in 1913, and the balance of lot No. 26 was conveyed to him in 1915. The restrictions contained in these deeds are numerous and lengthy, hence we will not incorporate them in the opinion and reference will only be made to the pertinent parts thereof. Both deeds recite the property conveyed "shall be used only for the erection of a single residence and no residence shall be erected thereon that shall cost less than $5,000." Following this in both deeds appear these restrictions: limiting the materials out of which the exteriors and roofs may be constructed; providing all outbuildings must be under one roof and cannot be erected until the residence is begun; limiting the height and location of fences; limiting the grade of the lots to the present grade above Windsor Place. Such restrictions were included in all forty-seven of the lots in the Subdivision but two, while the deed to lot No. 27 (upon which is located the appellees' home) and the deeds to thirty-one other of these lots contained a covenant that the grantor "will

restrict all its other lots in said subdivision, fronting on Windsor Place, for residence purposes only." However, the covenant just quoted was omitted from the deed conveying the balance of lot No. 26. The deed to lot No. 26 (which is located on the corner) recites that after a residence is built facing Windsor Place in conformity with the above restrictions, the owner may then erect an apartment house "on the rear of said lot and on the 40 feet of same laying along the alley" (evidently meaning it was to face on Bardstown Road), the lower floor of which may contain offices or storerooms. It appears from the record that this privilege has not been exercised and that lot No. 26 is entirely vacant.

In a written opinion the trial court discussed the evidence supporting its findings of fact and concluded that the restrictions on the use of lot No. 26 should be removed except that no structure erected on the lot should be within 35 feet of the property line facing Windsor Place or within 3 feet of either of the sidelines of the lot, and entered judgment accordingly. The judgment thus largely preserved the appearance of the entrance to Windsor Place, yet freed the rest of the lot which faced Bardstown Road from restrictions on its use.

The trial court noted in its opinion that all deeds to lots in the Subdivision which carried the restrictions and the negative covenant were executed between 1919 and mid-1916, and those deeds from the developer and subsequent to mid-1916 carried neither any building restrictions nor any negative covenant. The trial court did not determine whether the developer had a general building plan for the Subdivision originally or whether the developer had abandoned it if it did have one, but based its conclusion on the fact that some of the property was not rental property, some of the owners or tenants took in roomers, and for a number of years various businesses have been shown by the Caron City Directory to have had mailing addresses or offices in residences on Windsor Place. The trial court was also impressed by the fact that the developer early recognized that the corner lots had characteristics somewhat different from the other lots in the Subdivision and that the City had for thirty years recognized the commercial trend along Bardstown Road by zoning the area accordingly. For years a doctor's office had been located across Windsor Place on corner lot No. 1. For whatever reason, no residence ever was built on lot No. 26 although it was available for that purpose. The shape of the lot and the burgeoning traffic and commercial development along Bardstown Road are probably the reasons.

We agree with the chancellor that change has come to Windsor Place, but are more impressed by the failure of some of the deeds to contain the restrictions and covenant. The uniformity of construction in the Subdivision consequently appears to stem more from aesthetic considerations than from compulsion. In the modern view, building restrictions are regarded more as a protection to the property owner and the public rather than as a restriction on the use of property, Brandon v. Price, Ky., 314 S.W.2d 521 (1958), and, when viewed in that light, it is difficult for us to see how the judgment in this case could better meet the situation presented here. It permits lot No. 26 to be used as it was originally intended to be used, yet requires any commercial construction on it to be set back 35 feet from Windsor Place as are the residences along it.

We also conclude that our 1940 opinion in Meyer v. Stein, 284 Ky. 497, 145 S.W.2d 105, where we refused to permit a funeral home to be operated from the residence on lot No. 27 and the adjoining 10 feet of lot No. 26 is not controlling in the factual situation now presented. In that litigation lot No. 26 was only tangentially involved. Robbins v. Cornell, Ky., 311 S.W.2d 543 (1958), is distinguishable on the facts.

The judgment is affirmed.

All concur.