## WOODS v. WESTERN HOLDING CORPORATION.

No. 4937.

District Court, W. D. Missouri, W. D.

April 1, 1948.

Ed Dupree, General Counsel, and Hugo V. Prucha, Asst. General Counsel, both of Washington, D. C., C. H. Lichliter, Sp. Litigation Atty. Office of Housing Expediter, of Atlanta, Ga., and Carroll W. Berry, Chief Rent Attorney, of Kansas City, Mo., for plaintiff.

William G. Boatright, Kansas City, Mo., for defendant.

REEVES, District Judge.

This is an action by the Housing Expediter to enjoin the defendant from collecting or attempting to collect rentals in excess of a maximum fixed by the Housing Expediter and to prevent the eviction or any attempt to evict tenants for failure to meet the demands of the defendant for rental charges in excess of those established by the Housing Expediter. In addition, the plaintiff sought to prevent the defendant from offering to rent any portion of said premises in "any manner contrary to the provisions of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., and the rent regulations issued pursuant thereto."

There was a further prayer:

"That Defendant be required to make restitution to said tenants and be directed to refund to tenants, occupying or who occupied housing accommodations, all of the rent overcharges resulting from the collection of more than the maximum legal rents established pursuant to the Emergency Price Control Act of 1942, as amended and extended, and the Housing and Rent Act of 1947, and the rent regulations issued pursuant thereto."

The properties involved are located at 103 West Ward Parkway and 107 West Ward Parkway and are known as Casa Loma East and Casa Loma West, Kansas, City, Missouri. Each building is nine stories high and has sixty-five units.

The complaint is conventional.

By answer the defendant asserts that, (a) the Housing and Rent Act of 1947 is unconstitutional, and (b) that these particular properties are not subject to control, or, in other words, that they have been decontrolled by the latest Congressional Act.

It is unnecessary to notice the constitutional question raised by the defendant for the reason that the Supreme Court, in Tighe E. Woods, Housing Expediter, v. The Cloyd W. Miller Co., a corporation, and Cloyd W. Miller, 68 S.Ct. 421, on appeal from the District Court of the United States for the Northern District of Ohio, upheld the constitutional validity of the act. The only other question then is whether the properties in question are subject to

control under the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., directly affecting rentals.

The latest Act of Congress, approved June 30, 1947, appears in Title 50 U.S.C.A. Appendix, § 1892, et seq., the first relating to Definitions under the said Housing and Rent Act of 1947. By paragraph (c) of said Section 1892 controlled housing accommodations are defined as follows:

"The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include—

" (1) those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services, such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; * * *."

By paragraph (d) of Section 1894 of said Act:

"The Housing Expediter is authorized to issue such regulations and orders, consistent with the provisions of this title, as he may deem necessary to carry out the provisions of this section and section 202(c) (section 1892(c) of this Appendix)."

Pursuant to such authorization, the Housing Expediter on September 5, 1947, issued, among others, the following regulations or interpretations of the Act:

"There is no all-embracing definition in the regulation of what is commonly known as a hotel and consequently each decision must be based upon the test of whether or not the particular establishment is commonly known as a hotel in the community in which it is located."

The evidence on the part of the plaintiff disclosed that these housing accommodations were ordinarily known among the occupants and others as Casa Loma East and Casa Loma West. The designation "hotel" was not in popular use among the occupants. However, each one of them said that there was maid service, laundry service, a telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and a limited bellboy service. From their testimony it did not appear that uniformed bellboys were in attendance on the guests. However, several occupants of the properties said that they were favored with services from the elevator boy who performed the functions of a bellboy. Some of the other services were mentioned by the occupants as not adequate or full and complete. However, it was stated that, however limited, the services were provided.

Aside from the clear and lucid regulation or interpretation of the Expediter hereinbefore set out the courts have not, in view of rapidly changing customs and habits of the people, fixed upon an acceptable modern definition of hotels. The use of the appellations "tavern" and "inn" has almost become obsolete and it is judicially recognized that there are variants in the use of the name hotel.

The defendant produced evidence of well informed and experienced witnesses, such as hotel builders and hotel operators, who testified without exception that they were familiar with these properties and the manner of their operation. They said that in Kansas City there are three classes of hotels: viz, the regular commercial or transient hotel, devoting the greater part of its business to the traveling public, the apartment hotel, and the family hotel. These witnesses stated unequivocally that the two properties in question were apartment hotels and that, while they accommodated many permanent guests, they nevertheless made provisions for transient guests. It appeared, furthermore, that the properties in their operation were classified as hotels by the state regulatory and supervising authorities and paid an occupation tax as such.

1. It is contended by the plaintiff that a hotel, as such, must be classified in accordance with judicial construction and that the testimony of witnesses as to how the properties were considered should be disregarded.

Witnesses other than occupants said that the properties were known as apartments and in one case the witness said that the two properties were known as a combination of apartments and apartment hotels. Several witnesses for the plaintiff were positive they

had never heard the properties called apartment hotels, but only apartments.

■ Section 9931, R.S.Mo.1939, Mo.R. S.A., defining what buildings shall be construed as hotels is as follows:

"That every building or other structure, kept, used, maintained, advertised or held out to the public to be a place where sleeping accommodations are furnished for pay to transient or permanent guests, in which ten or more rooms are furnished for the accommodation of such guests, whether with or without meals, shall for the purpose of this article be deemed a hotel, * * *."

The object of this definition was to enable the State of Missouri to exercise proper supervision over housing accommodations of this character. Clearly the defendant was within this definition.

■ 2. Moreover, it is to be noted that the original conception of hotels, inns and taverns has been greatly modified to meet changed customs and habits of the people. As said in 43 C.J.S., Innkeepers, § 1:

"The character of a place as an inn or hotel is not lost because of the type of structure or the surrounding buildings or lands, or because a different appellation is bestowed on it."

In the case of Marden v. Radford, 229 Mo.App. 789, 84 S.W.2d 947, the Kansas City Court of Appeals had before it questions pertinent to the inquiry here. A question of liability arose with respect to an occupant of a kitchenette apartment, much like those maintained in these structures. The court held that the occupant was a mere lodger and that it devolved upon the owner to maintain the property in condition for safe occupancy. The defendant in that case exercised the right of visitation and did not accord to the tenant the exclusive control of the premises occupied. The same thing is true in this case. Pass keys were in the control of the operator. In no case was the occupant in exclusive domination, as in the case of tenants, but in every way the occupant sustained a precise relation to the operator as any guest would sustain to the operator of a hotel, whether it be commercial, family, or otherwise.

■ 3. The testimony further showed that, before the war, uniformed bellboys were in attendance, awaiting the pleasure of guests, but that, since the war, it had been difficult to maintain as good service as formerly. It is a matter of common knowledge that the services in hotels and similar institutions have been greatly impaired since the war because of the great demand for labor and the standards of hotel operations have been greatly lowered because of this fact and because of the inability of the operators to procure the better service experienced to the war.

4. The plaintiff and his diligent and able counsel have been both earnest and industrious in presenting the issues in this case. In fact it has been treated somewhat as a test case. It is inferred that much rests, so far as the Housing Expediter is concerned, upon the final decision. The plaintiff is anxious that his authority be extended as far as the law permits to the end that those who are occupying similar properties may be protected against the exactions of higher rentals or charges. It appeared, furthermore, that the guests of these establishments are eager to invoke the protection of the law so as to save them from increased, and, as they believed, burdensome charges or rentals.

It is undisputed that the defendant has increased its charges or rentals considerably; it frankly acknowledges this fact but says that it did so in the firm belief that these properties, because of the character of the operations, have been decontrolled.

■ 5. The court is mindful of the interests of all the parties and the earnestness with which the case has been tried and briefed. Due consideration to the law as well as to the evidence in the case convinces that the defendant has met its burden to bring itself within the exception set out in the statute. It not only heretofore classified itself as a hotel but in its operation it has met in every way the conditions for decontrol named in the law. It is not expected, and the authorities do not hold, that the services requisite for decontrol must be performed by separate and distinct employees, or even satisfactorily rendered, but the question is whether the services were rendered.

■ From the facts in the case it should be found that the defendant is not subject.

94

to the supervision and regulations of the Housing Expediter for the reason that it is within the exception provided in the statute mentioned. Accordingly the issue should be found for the defendant.

An examination of proposed Findings of Fact submitted by counsel for the defendant shows them to reflect the overwhelming preponderance of the testimony but that some of them perform the function of a statement of Conclusions of Law. If it becomes necessary, they may be separated and will be separated. They are given as offered or proposed.