## Kynor v. Enggren

*Brown, Swope & MacPhail,* for plaintiff.

*Eugene R. Hartman,* for defendants.

SHEELY, P.J., April 25, 1959.—This matter is before the court on defendants' petition to open a judgment entered against them by confession in an amicable action in ejectment. An answer was filed to the petition, and depositions in support of the contentions of the parties have been taken.

The property in question was originally owned by Glen F. Weishaar, et. al., who negotiated with plaintiffs for the sale of the property. At the same time defendants were negotiating for the lease of the motel on a portion of the property. With the full assent of plaintiffs the Weishaars leased the motel premises to defendants for a term of one year with the right of renewal for an additional year under the terms of a written lease dated May 26, 1958. Upon completion of the sale by the Weishaars to plaintiffs, the lease was assigned to plaintiffs.

The lease contained a covenant that the lessee would use the premises "as a motel and for no other purpose," and that they would not assign the lease or any part thereof to any other person without the consent of the lessors "under penalty of instant forfeiture and right of re-entry for such breach." The lease also provided that the lessee would pay for any gas or electric light used upon the premises, that any damage to buildings, fixtures, etc., would be paid by the lessee, that the lessee would not injure or deface the premises in any manner but would keep and preserve them in good order, that not more than one unit per night would be rented to a party with pets and that lessors reserved the right to make improvements to the exterior of the leased premises which would not interfere with the

normal operation of the motel. The lease contained a confession of judgment clause authorizing the confession of judgment against the lessees on failure to pay the installments of rent as due and on failure to keep all the covenants of the lease.

On November 5, 1958, plaintiffs entered an amicable action of ejectment against defendants and caused judgment to be confessed therein, alleging that defendants had violated the terms of the lease by:

1. Attaching their electric sign to the line of the lessors in violation of the third paragraph of the lease.

2. Subleasing parts of the motel for housekeeping units in violation of the third paragraph of the lease.

3. By allowing cooking in the premises so as to injure and deface the premises by smoke, oil and gas, in violation of paragraph six of the lease.

4. By hindering the lessors from building and adding to the motel because of the housekeeping nature of the tenants, in violation of paragraph 12 of the lease.

5. By allowing garbage to accumulate and by storing soiled sheets in the lessors' garage and by allowing clotheslines to be maintained in front of the motel in violation of paragraph six of the lease.

From the depositions it is clear that the relationship between the parties has been far from harmonious and that plaintiffs, who live in the house adjoining the motel, have been disturbed about the alleged grievances against defendants. From reading the testimony of Mr. Kynor, one gets the impression that he was determined to break the lease and that he seized upon every possible grievance as a violation of the lease. Our sole concern here, however, is whether the judgment in ejectment entered against defendants by confession under the lease should be opened to permit them to enter a defense to the charges that they had violated the terms of the lease. The rights of the parties must

depend upon the terms of the lease and we will consider the charges in the order in which they are made in the amicable action of ejectment . . .

The question remains whether the leasing of units of the motel for housekeeping purposes for periods of time constituted a use and occupancy of the premises for a purpose other than a motel. Here plaintiffs complain that defendants rented to undesirable tenants, and that they were annoyed and inconvenienced by acts of the tenants, etc. Again, these complaints are beside the point. The lease is silent as to the type of tenants or guests to whom defendants could rent the premises and as to the conduct of the tenants or guests while there. The question is simply whether the renting of units for longer periods of time as housekeeping units was use of the premises other than as a motel.

The word "motel" is comparatively new in our vocabulary, and yet it has acquired a somewhat definite meaning. A dictionary definition is that it is "an establishment approved by the American Motel Association, Inc., consisting of a private residence, or as a group of specially built cabins where overnight guests are accommodated." In Parrish v. Newbury, 279 S. W. 2d 229, 233, (Ky., 1955), is was defined as a modern development of an inn or a hotel which serves transients. In Maturi v. Balint, 204 Misc. 1011, 130 N.Y.S. 23 122, it was held to be a hotel. In Schermer v. Fremar Corp., 36 N. J. Superior Ct. 46, 50, 114 A. 2d 757, a zoning ordinance case, motels were referred to as buildings which furnish accommodations for transients, and it is there pointed out that the accommodations may be for a short period of time, such as overnight, "or may, especially in resorts, be for a longer period of time, such as weeks or months. Where the guests' residence is for the longer period, the units are quite frequently constructed with cooking facilities by the inclusion of a kitchenette."

The basic concept of a motel is that it furnishes a type of accommodations for the traveling public having some, but not all, of the attributes of a hotel and some, but not all, of the attributes of a tourist lodging house. The furnishing of accommodations to the traveling public, however, is basic. The question then arises whether a restriction in the lease that the premises are to be used as a motel and for no other purposes restricts the use of the accommodations to transients and prohibits the rental of some of the units for longer periods of time and as housekeeping units. The question of interpreting the terms of the lease is essentially a question of the intention of the parties.

In the ordinary motel the guests check in late in the afternoon and leave early in the morning; the units are vacant during the day. Occupancy during the day for housekeeping purposes would place an added burden on the facilities including greater water consumption and increased sewage disposal, as well as the problem of garbage disposal. On the other hand, two of the units of this motel were equipped with kitchenettes which implies that at least some housekeeping activities were contemplated by the transient guests.

We may take judicial notice of the fact that the motel business in this locality is seasonal and that for several months of the year the occupancy is very low or nonexistent. We may also take judicial notice that hotel and tourist lodging houses frequently, and particularly during the off-season, will accept guests for extended periods of time and may even accept permanent guests. Doing so does not destroy the basic character of the hotel or the tourist lodging house as being primarily designed to accommodate transient guests. The question may be one of degree and the answer may depend upon the extent to which the premises are used for transient or for semi-permanent guests. But we would not be prepared to say as a

matter of law that the rental of several units of a motel for extended periods of time during the off-season, keeping other units available for transients, would violate a covenant that the premises should be used as a motel and for no other purpose.

In this connection it is noted that the lease provides that not more than one unit per night should be rented to a party with pets. Had the lessors desired to restrict the use of the premises solely to transient guests they could easily have done so by a similar restriction. . . .

And now, April 25, 1959, the rule to open judgment is made absolute; the judgment is opened and defendants are permitted to enter a defense thereto. In that action the answer filed by plaintiffs to defendants' petition shall be considered as a complaint and defendants' petition considered as the answer thereto.