[No. 40975.   En Banc.   June 25, 1970.]

HENRY LACKMAN, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*\*

*Cullen, Campbell & Wightman* (by *Roland C. Wightman*), for appellant.

*The Attorney General*, and *Stanley D. Moore, Assistant*, for respondent Department of Labor and Industries.

*Hennessey, Curran, Jansen & Kelly* (by *Marcus M. Kelly*), for respondent Locher.

McGOVERN, J.—Plaintiff appeals from a judgment of the superior court affirming an order of the Board of Industrial Insurance Appeals which had directed the Department of Labor and Industries to allow defendant Jessie Locher the benefits of the Industrial Insurance Act.

The facts are undisputed. Jessie Locher was injured while acting in the course of her employment with the Trade Winds Motel in Spokane, Washington. Her claim for benefits under the Industrial Insurance Act was denied upon the theory that her employment was not included within the mandatory provisions of the act. Her employer had not elected to place the business and its employees under the act on a voluntary basis.

\*Reported in 471 P.2d 82.

Employees covered by the mandatory provisions of the Industrial Insurance Act include those ". . . supplying service to the public in *hotels* . . ." (Italics ours.) RCW 51.12.010. Therefore, if the Trade Winds Motel is in fact a "hotel" within the meaning of that word in the Industrial Insurance Act, then Jessie Locher is entitled to the benefits of the act.

Although the Industrial Insurance Act does not carry a definition of the word "hotel" within its provisions, the word is defined elsewhere in our statutory law. RCW 19-.48.010, relating to the innkeeper's liability law, describes the essential qualities of a hotel as

> Any building held out to the public to be an inn, hotel or public lodging house or place where sleeping accommodations, whether with or without meals, or the facilities for preparing the same, are furnished for hire to transient guests, in which fifteen or more rooms are used for the accommodation of such guests . . .

And for purposes of public health and safety (RCW 70-.62.010) the word is fixed as including

> Every building or structure kept, used, or maintained as, or advertised as, or held out to the public to be an inn, hotel, or public lodging house, or place where sleeping accommodations are furnished to the public for hire in periods of less than one week in which five or more rooms are used for the sleeping accommodations of its guests . . .

■ Certainly a hotel does not lose its identity as a hotel within the contemplation of the Industrial Insurance Act merely because the owner of the property has bestowed upon it a designation of something other than "hotel". It is the services offered and the facilities available that are determinative. It is not the name by which the establishment is known which controls its status.

Appellant adopts his description of the premises from the statement of facts, as follows:

> This establishment is a four-story building containing 59 rental units, each consisting of a bedroom and bath, a private lanai, and in addition, dressing alcoves in some of these units. As part of the premises there are some

sample rooms, a swimming pool, both underground and surface parking areas, a laundry in the basement used exclusively for linen, two automatic elevators, and an office with a lobby, which "is quite spacious for a motel" with a colored television set, sofa and "probably eight or nine chairs" for the use of guests. In each rental unit there is a television set, radio, coffee maker on the wall providing coffee free of charge, and a dial telephone which is metered for outgoing calls. There is a switchboard in the office operating twenty-four hours a day, a magazine stand directly across from the registration area, a merchandise vendor for sundry items such as combs and razor blades, a cigarette machine, and a candy machine on the first floor. A mailbox tray is located at the registration desk for outgoing mail, and incoming mail and messages for guests are kept in a pigeonhole arrangement for mail and room keys located behind the registration desk. There are coin-operated soft drink machines, and ice machines on each floor with ice buckets. Other services provided for the guests are a wake-up call service, complete linen service, glasses and stationery, advance free registration through the establishment's affiliation with Better Western Hotels, a pickup arrangement with one of the laundries whereby guests leave their laundry at the desk and the laundry driver picks it up at 8:00 a.m., and delivers it the same evening. Normally, the charges for laundry are placed upon the guests' bill. In addition, if the guests require a card table, an iron and ironing board, and cribs and rollaway beds, these are furnished. Although there are no bellhops, luggage carts are provided for guests. There is no restaurant or cocktail bar on the premises. However, at the time the claimant was injured, menus for an A & W Restaurant were provided in every room and if the guest called the desk, the desk clerk would take his food order and the food would be delivered by a restaurant employee to the guest in his room where it was to be paid for by the guest. The establishment was open to the public and operated for the purpose of offering either overnight or short stay lodging to transient guests. All charges for accommodation are on a daily basis. The proprietor of this establishment considers his competitors to be all the motels and hotels in Spokane. This establishment employs an average of thirteen people including desk clerks, two women in the laundry, and maids.

Our consideration of the comprehensive services and facilities available at the Trade Winds Motel leads us to conclude that the establishment is a hotel within the meaning of that word in the Industrial Insurance Act. Like the court in *Schermer v. Fremar Corp.*, 36 N.J. Super. 46, 114 A.2d 757 (1955), we believe that a hotel is primarily an establishment which provides lodging for transients, and that "a place which would otherwise be in an inn or hotel does not lose its character as such because of its mode of construction, the appellation bestowed on it by the proprietor, or the fact that food and drink cannot be obtained therein . . ." When, as here, the establishment is admittedly in competition with other hotels in the area, affords a very substantial number of rooms for its transient guests, and has available the great number of services that the Trade Winds Motel makes available for its guests, then that establishment is a hotel within the terms of the Industrial Insurance Act.

The continued attempt to draw fine-line distinctions between covered and noncovered activities within the meaning of Industrial Insurance Acts has been properly criticized by a leading authority on the subject. In 1A A. Larson, The Law of Workmen's Compensation § 55.24 (1967) it is said, at page 989:

The net impression left by all these attempts to define hazardous employments, whether by specific lists or by general description, is one of hairsplitting distinctions, appalling waste of judicial time and effort, and continuing unpredictability of coverage.

And then, speaking on the subject before us, the author says, at page 990:

The distinctions between a hotel and a motel were perhaps obvious at one time. With the advent of the highrise downtown motel and the drive-in free-parking hotel, the only remaining difference until very recently seemed to be that in a motel one could help oneself to a bucket of ice cubes at an ice machine, while in a hotel it was necessary to wait a half hour for room service and then hand out a fifty cent tip.

We decline to make the fine-line distinction requested

by the appellant and therefore conclude that the Trade Winds Motel is a "hotel" within the provisions of the Industrial Insurance Act. We affirm the judgment and order of the trial court.

FINLEY, ROSELLINI, HAMILTON, HALE, NEILL, and STAFFORD, JJ., and HILL and DONWORTH, JJ. Pro Tem., concur.