**Marion V. HARDESTY et al., Appellants,**

v.

**John J. SILVER et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 14, 1956.

Rehearing Denied June 21, 1957.

Wm. S. Kammerer, Louisville, for appellants.

Lee Curd Miller, James W. Stites, John A. Fulton, Louisville, for appellees.

CULLEN, Commissioner.

The owners of Lots 1, 2 and 3 in Block 8 of the Shawnee Park Subdivision in Louisville brought action against the owners of the other lots in the subdivision, seeking a judgment cancelling the restrictive covenants against business development of Lots 2 and 3 of Block 8, contained in all of the subdivision deeds. The circuit court denied the relief sought, and the plaintiffs have appealed.

The subdivision was laid out in 1905. It consists of 67 lots, in 7½ blocks, all fronting on the south side of Broadway Street in Louisville, from 44th Street on the west to a point 150 feet beyond 38th Street on the east. Block 8 is the easternmost block, and the lots owned by the plaintiffs are on the southeast corner of the intersection of Broadway and 38th Street. Lot 4 of Block 8, immediately east of the plaintiffs' lots, is the last one on the east end of the subdivision.

The subdivision deeds restrict all of the lots to residential use, except Lots 8 and 9 of Block 3, Lots 8 and 9 of Block 5, Lots 8 and 9 of Block 6, and Lot 1 of Block 8. For many years Lots 8 and 9 of Block 3 and Lots 8 and 9 of Block 5 have been occupied by commercial structures, and Lots 8 and 9 of Block 6 have been occupied by a church building. The structures on the other lots in the subdivision all are residence structures, although there has been some use of three of the residences for other than strictly residential purposes, as will presently be pointed out.

The plaintiffs wish to have their lots utilized for a gasoline service station, and they maintain there has been such a fundamental change in the character of the prop-

erty in the subdivision and in the neighborhood and such a waiver of violations and abandonment of the restrictive covenants as to make the restrictions no longer enforceable.

The chancellor, the Honorable Stuart E. Lampe, discussed and answered the contentions of the plaintiffs in a well reasoned and excellently written opinion, in which we concur. We adopt and quote from his opinion as follows:

"Broadway, at this point, has become a very important traffic artery, and it is to be presumed that, in the future, with the expansion of industry to the southwest and other developments, its importance as a busy traffic thoroughfare will increase rather than diminish. It is a wide street, even at the present time being widened to accommodate more traffic. On the north side of Broadway, opposite this subdivision, are many commercial enterprises.

"The Board of Aldermen has recognized a need for additional commercial zoning in this area, and not only are the lots now under consideration zoned for commercial use but also lot No. 4, adjacent to them to the east, and the four lots on the southwest corner of 38th and Broadway are similarly zoned. Under these conditions, should the Court now declare ineffective the covenants restricting lots 2 and 3, Block 8, to residential use?

"Plaintiffs rely on the case of Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024, wherein covenants as to residential use of property in a subdivision were declared to be inoperative. The facts in the Goodwin case, having to do with abandonment of restrictions, were much stronger than those in this case. There, the Court was dealing with an implied rather than an express restriction against business. The lot owner had stood by and permitted all lots in a square, except for two, to be developed commercially, contrary to this implied restriction. As will be pointed out herein, the violations of the restriction

against business in the Shawnee Park Subdivision have been much less than in the Goodwin case.

"Also cited is Bagby v. Stewart's Ex., Ky., 265 S.W.2d 75. There the Court refused to enforce a restriction and stated that a party can lose his right to enforce a restrictive covenant by waiver or abandonment where the change in the character of the neighborhood brought about by acquiescence in violation of the restrictions 'renders its enforcement no longer practicable.'

"I think that, except for minor differences, this case closely parallels the case I had before me, and which was affirmed by the Court of Appeals in its opinion, in Franklin v. Moats, reported in Ky., 273 S.W.2d 812. There, as here, most of the subdivision was restricted for residence purposes only, but commerce was authorized and developed on a few lots. And as here, we were dealing with a busy thoroughfare, Taylor Blvd., on the opposite side of which wide street, considerable commercial development existed. I felt then that the wide boulevard constituted somewhat of a natural barrier between the commercial and residential development. This consideration was approved by the Court of Appeals. There, as here, the zoning by the Board of Aldermen authorized commercial development on the lots in question. Although there some commercial development was permitted within the subdivision, although some change toward commercial development was recognized in the area, although the residential property abutted a busy-traffic thoroughfare, although the opposite side of the street was developed in a commercial way, the Court of Appeals refused to hold that the restrictive covenants had become unenforceable.

"The Franklin v. Moats case, I think, is authority for the rule that I cannot consider the authorized, as distinguished from the unauthorized, commercial development within the subdivision. It is further authority, I think, for the proposition that not much weight should be given to the

commercial development on the north side of Broadway.

"There are three facts in the case I am now considering which have some tendency to distinguish this case from Franklin v. Moats. I think the proper solution to this controversy hinges upon what weight should be given these three facts. First, is the fact that one of the plaintiffs, Mr. Wurster, at one time obtained permission from one of the defendants, Mr. Riggs, to exhibit in the front yard of his residence a sign advertising the fact that he was in the floor-sanding business, the wall-paper steaming business, and that he had power tools for rent. (Mr. Wurster lives on Lot 3 of Block 8, and Mr. Riggs on Lot 4.)

"The second fact consists of the use by Dr. C. M. Carrico of a portion of his residence as a professional office. (On Lot 8 of Block 7.)

"The third fact consits of the use by Mr. Brotzge of a part of the downstairs of his residence as the Colonial Flower Shop. (On Lot 9 of Block 7.)

"These last two violations of the strict terms of the restrictive covenants exist on the southwest corner of 38th and Broadway.

"It is to be noted that all of these alleged violations have taken place inside a residence. The outward appearance of each building is that of a residence with the exception of the fact that a sign is plainly visible indicating what business or profession is being conducted inside of that residence. Does the fact that the owners of residentially-restricted lots in Shawnee Park Subdivision have stood by and permitted these minor violations of the restrictive covenants, constitute such abandonment or waiver of the restrictions as to prevent them from now enforcing the restriction against the proposed use of three lots as a gasoline filling station?

"In the case of Mechling v. Dawson, 234 Ky. 318, 28 S.W.2d 18, the Court held that, although a church and parish house had been erected on residentially-restricted property, the remaining lot owners were not stopped for that reason from enforcing their restriction against actual business development. The Court pointed out that there was a wide difference between a business house and a church. Recognizing that there might have been a technical violation of the covenants, they held the violation to be too inconsequential to amount to an abandonment by the other lot owners.

"Another case somewhat helpful is that of Biltmore Development Co. v. Kohn, 239 Ky. 460, 39 S.W.2d 687, wherein it was stated that acquiescence by other lot owners in the use by one of the lot owners, who was a plumber, of the garage building on the rear of his residential lot in his business did not amount to abandonment. The Court said:

" ' * * * acquiescence in slight and inconsequential violations not effecting a material change in the character and use of the restricted territory does not estop a property owner from objecting to a substantial violation of the restrictive covenant.' "

"I have no difficulty in finding that the exhibition of the sign in Mr. Wurster's front yard, and the use by Dr. Carrico of a part of his residence for professional purposes, are inconsequential violations. The conducting of the florist business in the Brotzge residence, however, must be considered more than an inconsequential violation.

"Counsel for defendants cite the case of Leaver v. Gorman [73 N.J.Eq. 129], 67 A. 111, a New Jersey case. There the Court held that because of prior acquiescence a land owner had lost the right to enjoin the use of residentially-zoned property for a bottling plant, but went on to hold that he was entitled to enjoin any extension of the business use.

" ' * * * this acquiescence can only be held to extend to the business as it has been conducted in the past, not to an in-

creased business where more steam or other power may be employed, where more teams may be used, and more noise and vibrations results.'

"The above reasoning was also followed in the New Jersey case of Polhemus v. De Lisle [98 N.J.Eq. 256], 130 A. 618.

"A case with facts more nearly approaching this one was considered by the Michigan Court in Polk Manor Co. v. Manton, 274 Mich. 539, 265 N.W. 457. The plaintiff in that case owned a large apartment building in a residentially-restricted subdivision. It sought, and was granted, an injunction preventing the erection of a filling station on nearby lots in the same subdivision. The opinion discloses that plaintiff itself had, for a time, suffered a beauty parlor to be conducted in its apartment building. On one lot at the extreme corner of the subdivision, one store building had been erected. The similarity of that case to this one is disclosed by the following facts quoted from the opinion:

" 'Many of the houses in the subdivision are being used for business purposes, such as dressmaking, cleaning establishments, beauty parlors, boarding houses, etc., all of which *are being conducted from residences*. No stores, or buildings designed for business purposes, have been built, with the exception of the single case noted above. There is a gas station on the West side of Second Avenue, abutting the alley in the rear of plaintiff's building, but located in another subdivision.' " (Emphasis supplied.)

"In refusing to declare that the restrictive covenants had been completely abandoned, the Court cited with approval from the opinion of the trial Judge as follows:

" 'Where the restrictive covenant has not been rigidly enforced, and where certain structures and uses have been tacitly permitted which are violative of the strict terms, but where, in spite of such relaxation, there still remains something of substantial value to those entitled to benefit by its provisions, they are still entitled to enforce it insofar as they were not affected by the principles of estoppel and waiver. Applying this principle, it seems clear that under the testimony there is no estoppel, and there has been no waiver of the right to object to the building and operation of structures which partake in no degree whatever of the character of residences within this subdivision, at least so far as the present plaintiff is concerned. The plaintiff is clearly estopped to object to such commercial uses as now exist in the residential buildings upon this subdivision. *It is not estopped to object to the new erection of structures which partake in no way of a residential character, and whose use is to be exclusively commercial instead of partially commercial in conjunction with a residential use * * *'* (Emphasis supplied.)

"I think the reasoning of the Michigan Court is sound. The restrictive covenant solemnly entered into is entitled to enforcement except only to the extent to which it might have been waived by the parties concerned. Here by acquiescence in the use of the Brotzge home as a florist shop, the use of the Carrico home as a professional office, and the permitted use of the front yard of Mr. Wurster to display a sign advertising his business, I think the other owners of lots in the subdivision have waived any right to object to the continuance of those uses or the indulgence in similar uses by still other lot owners. To this extent there has been a waiver. The parties have not, however, estopped themselves from enforcing their restriction against the erection of business, as distinguished from dwelling, houses. They have not estopped themselves from enjoining the erection of a filling station."

The judgment is affirmed.