**WEST VALE HOMEOWNERS'
ASSOCIATION, INC.,**
Appellant,

v.

**Eric SMALL, Appellee.**

**No. 2011–CA–001157–MR.**

Court of Appeals of Kentucky.

May 25, 2012.

J. Duncan Pitchford, Paducah, KY, for appellant.

John T. Reed, Paducah, KY, for appellee.

Before CAPERTON, COMBS, and LAMBERT, Judges.

*OPINION*

CAPERTON, Judge:

The Appellant, West Vale Homeowners' Association, Inc., initiated litigation below for the purpose of enforcing subdivision restrictions against the Appellee, Eric Small. The trial court initially found Small to be in violation of the restrictions, and enjoined him from further action. However, following a motion to alter, amend, or vacate filed by Small, the trial court reversed its decision, finding that the actions by Small, subsequent to its initial ruling, waived its ability to enforce the restrictions. West Vale now seeks restoration of the trial court's original ruling and continuation of the permanent injunction against Small. Upon review of the record, the arguments of the parties, and the applicable law, we reverse and remand this matter for additional proceedings consistent with this opinion.

The West Vale subdivision consists of large, estate-style lots located along a private, dead-end road in Paducah, Kentucky. Each home located in the subdivision is valued in excess of $1,000,000. The lots in the subdivision are large, with Small's 3.6–acre lot being the smallest, and the largest measuring 6.3 acres. The original developer of West Vale imposed a series of restrictions upon the lots comprising the development. These restrictions, which appear of public record with the McCracken County Clerk, govern many aspects of property ownership within West Vale. Restrictions apply to aspects of building size, architectural approvals, and building setback lines. They also contain a provision affording property owners the opportunity to seek a waiver of one or more restrictions through the approval of a two-thirds vote of Homeowners' Association members. All of the lots were subject to a 100–foot minimum setback line from the street in front of the lot, as well as being subject to a 25–foot minimum side setback to the sidelines.

The matter at issue *sub judice* arose when Small applied for such a waiver. Seeking to construct a large addition onto his home, Small requested a waiver of the setback restriction for the side lot line on his property so as to extend the proposed addition approximately 11 feet into the setback. Small submitted a proposal to the Association as well as a copy of the drawing of the proposed addition. The members of the Homeowners' Association met, discussed the issue, and ultimately declined to grant the waiver. Nevertheless, Small decided to move forward with his planned addition. He notified the Homeowners' Association of his intent to proceed, obtained a building permit, and commenced construction on the addition.

Upon discovering Small's disregard of the restrictions, the Homeowners' Association commenced the instant litigation, and obtained interlocutory relief from the trial court barring Small's construction activities. In response to the action filed by the Homeowners' Association, Small conceded that his proposed addition would violate the restrictions, but defended his actions by stating that the Association had, through acquiescence to other violations, waived its ability to enforce the restric-

tions. After the Association initiated this action, Small hired Rick Tosh of Dummer Surveying & Engineering Services to perform a physical survey and inspection of the West Vale subdivision and, in particular, to look for structures which violated setback lines.

Tosh testified below that his crew found eleven separate violations of structures which were placed within the various setback lines on seven of the ten lots. As found by the trial court, these included retaining walls and other landscaping features, driveway pedestals and signs, portions of driveways, a porch column located ten inches into the setback, and a pool house located seven feet into the setback. There was never any evidence submitted below as to whether the proposed addition would have increased or diminished the value of Small's home.

Upon reviewing these other alleged violations of the restrictions, the trial court concluded that only one—the construction of a pool house—was material. The court went on to hold that a single material violation did not equate to a waiver of the Association's right to enforce the setback restriction, and granted the Association's motion for a permanent injunction. Below, Leigh Smith, the Association president, testified that the Association had not been aware of the various violations, but acknowledged that no action had been taken to require the particular residents to remove the stone porch canopy or the pool house.

In its original opinion, the trial court noted that should any property owner be aggrieved by the pool house violating the setback restriction, the owner could file suit over the issue. Facing the possibility of additional litigation, the owners of the pool house property petitioned the Association for a post hoc waiver of the setback restriction for their pool house. The Association met, considered the request, and

granted the variance. In so doing, the Association found that granting the variance would not materially affect the quality and character of West Vale.

Approximately four months later, following the prehearing conference in the original appeal, Small moved the trial court to alter or amend its original opinion based upon the grant of the variance. Small maintained that by granting the variance, the Association waived its ability to enforce the restriction against Small. The trial court accepted that argument, and granted Small's request for relief under Kentucky Rules of Civil Procedure (CR) 60.02. It is from that order that the Homeowners' Association now appeals to this Court.

As its first basis for appeal, the Association argues that it did not, through acquiescence, waive its ability to enforce the restrictions, and that the trial court erroneously found that the Association waived its ability to enforce the restrictions by formally granting a waiver. The Association argues that the trial court impermissibly concluded that by formally granting a waiver for the pool house violation, the Association waived its ability to enforce the setback restriction against other lot owners. The Association essentially argues that because the underlying subdivision restrictions allow for waiver by vote when there is a disagreement of the parties, it is error to find waiver by acquiescence, as the trial court found herein. Specifically, the Association takes issue with the trial court's reliance upon the holding in *Hardesty v. Silver*, 302 S.W.2d 578, 581 (Ky.1956), because that case did not involve a situation where a waiver was formally granted pursuant to a waiver scheme established by underlying restrictions. The Association argues that it expressly intended for waivers to exist from time to time by providing for same in the

restrictions, and that it was error for the court to find that they were without authority to grant one in this instance.

Alternatively, the Association argues that even if the caselaw pertaining to waiver by implication were applied to the facts herein, it did not waive its ability to enforce the restrictions against Small simply because it voted to waive enforcement of the restrictions in the case of the pool house. The Association argues that the ability to enforce restrictions is removed when, through waiver of the restriction at issue, a change in the character of the neighborhood which was intended to be created by the restrictions has occurred, such that it is no longer possible to accomplish the purpose of the restrictions. The Association notes that herein, the trial court expressly found in its opinion that the existence of the pool house "has not materially changed the character of the subdivision," nor had the "basic character of the West Vale Subdivision" changed in the eighteen years since its construction. Thus, the Association argues that because the trial court did not find any facts which showed a change in the character of the subdivision as a result of the waiver, it erred in finding that the Association forfeited its right to enforce that restriction against others in the future.

Finally, the Association argues that the trial court erred in even considering its vote at all. It notes that a CR 60.02 motion is, by its nature, an unusual remedy which requires a very substantial showing to merit relief, including circumstances which are "extraordinary" in nature such as to justify disturbing the finality of the previous judgment. The Association argues that *sub judice,* despite the finality of the opinion and its pendency upon appeal, the trial court reopened the judgment to consider evidence of conduct which oc-

curred after entry of the opinion. While acknowledging that the trial court considered the evidence to be "newly discovered," the Association argues that its vote should not have fallen under that classification.

In response, Small makes one argument: namely, that the Homeowners' Association, through its express waiver of other violations, has waived its right to object to Small's receiving the exact same waiver. Small argues that throughout the trial, the Association placed a great deal of emphasis on the fact that it had been consistent in never approving an encroachment to the setback lines. He asserts that the trial court's first ruling was based to a large extent on the fact that the Association had never approved such encroachments in the past. Small argues that by approving two substantial violations to the setback lines on January 31, 2011, but continuing to deny Small's request, the Association created a situation identical to the facts in the case of *Reserve Estates, LLC v. Berkemeier,* 2009 WL 4199799 (Ky.App.2009) (2007–CA–002444–MR).[1]

In *Berkemeier,* the developer had routinely approved waivers of the prohibition against detached garages. After the parties became estranged, Berkemeier requested approval for a detached garage. The real estate developer changed his position and sought to prohibit the lot owner from constructing the garage. Small likens this scenario to the matter *sub judice.* He notes that at the meeting of January 31, 2011, the Homeowners' Association specifically found that the pool house violation of 6.95 feet did not materially affect the quality of the neighborhood, and likewise found that the stone canopy did not affect the material quality of the neighborhood. Small argues that with respect to

---

1. We note that this is an unpublished case. Accordingly, we do not cite it as authority but address it only insofar as the parties made arguments in reliance upon it.

his own proposed addition of 6.95 feet, the Association made no finding with respect to whether it would materially affect the quality of the neighborhood.

Small thus argues that when the Homeowners' Association met on January 31, 2011, and approved two violations of the setback restriction, both of which were identical to what Small requested, the Association waived its right to strictly enforce the restrictive covenants as to his requested variance. He therefore asserts that the trial court was correct in amending the injunction, and urges this Court to affirm.

Prior to reviewing the arguments of the parties, we note that the interpretation and construction of restrictive covenants is a question of law. Therefore, we review this matter *de novo*. *See Colliver v. Stonewall Equestrian Estates Association, Inc.,* 139 S.W.3d 521, 525 (Ky.App.2003). Actions under CR 60.02, however, are taken under the sound discretion of the trial court, and we will not disturb those decisions absent an abuse of discretion. *Richardson v. Brunner,* 327 S.W.2d 572, 574 (1959). Ultimately, having reviewed the arguments of the parties and the record below, we believe that resolution of this matter turns on the trial court's use of CR 60.02 in reopening the judgment below to consider evidence of conduct which occurred after entry of the opinion, and for the reasons set forth herein *infra*, we are compelled to reverse.

In its order of June 2, 2011, the trial court found that, "Until the January 31st meeting, the Homeowners' Association had never approved an encroachment into the setback lines of Subdivision." In an understandable attempt at equity, the trial court noted that while the Homeowners' Association approved two other structures in the neighborhood, one of which had a 6.95–foot encroachment, stating that "they do not materially affect the quality of the

neighborhood," but denied Small the same approval, saying his proposed addition "would be against the association covenants." The trial court found this decision to be inequitable, and stated:

> Had the Homeowners' Association taken its action before the trial of this case, this Court would not have enjoined the Defendant's proposed construction of an identical 6.95–foot encroachment which the Homeowners' Association approved for Lot 3. The Court would have followed the rule stated in 20 Am.Jur.2d Covenants, Etc. that "a lot owner who has knowingly and without objection permitted several grantees to violate restrictions cannot, therefore, enforce such restrictions against another grantee.

*See* McCracken Circuit Court June 4, 2011 Memorandum and Order Granting Relief Under CR 60.02.

 The trial court reasoned that in this case, Small was unable to fully present his claim of waiver prior to the entry of the permanent injunction against him because the Association did not vote to waive the subdivision setback lines for two other homeowners until after trial of this case and entry of a permanent injunction. Accordingly, the court found that because it would have found that waiver by acquiescence applied if the action had been taken earlier, CR 60.02 was applicable, and amendment of the injunction was warranted. While we certainly understand the court's desire to reach an equitable conclusion in this matter, we disagree with the applicability of CR 60.02 to the facts *sub judice*.

 CR 60.02 provides as follows:
> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due dili-

gence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

Certainly, CR 60.02 affords the trial court the discretion to reopen a judgment or order for the consideration of newly discovered evidence, which was unavailable to the court at the time of judgment. It does not, however, allow for a judgment to be reopened and altered on the basis of facts which occurred after the judgment was entered. Certainly, newly *discovered* evidence—materials thought no longer to exist, witnesses unable to be located, or documents unable to be located for discovery—would qualify for reconsideration of the judgment under this rule. However, this Court is not persuaded that CR 60.02 vests the trial court with the authority to amend a permanent injunction on the basis of actions taken by one of the parties after that injunction was entered.[2] Were the trial court to have such authority, no judgment would have the finality intended by the rules, and all would be subject to amendment and reversal at any time on the basis of actions taken after the fact. We do not believe that this was the intent behind CR 60.02, and find it to be an outcome inconsistent with the purpose and plan of our civil rules as a whole.

Likewise, while CR 60.02(f) does provide that a judgment may be made for any other reason of an extraordinary nature justifying relief, we do not believe the facts *sub judice* rise to this level. As we have previously held, a CR 60.02 judgment is, by its very nature, an unusual remedy, and requires a very substantial showing to merit relief. *See U.S. Bank v. Hasty*, 232 S.W.3d 536, 541 (Ky.App.2007). We do not believe actions taken by the Homeowners' Association after entry of the injunction rise to the level of "extraordinary" in nature required to obtain relief under this provision. To do so would be to broaden the scope of CR 60.02 beyond what we believe was intended. Having so found, we decline to address the remainder of the arguments of the parties concerning waiver.

Wherefore, for the foregoing reasons, we hereby reverse the June 2, 2011, memorandum and order granting relief under CR 60.02 entered by the McCracken Circuit Court, and order that the initial injunction of October 29, 2010, be reinstated.

ALL CONCUR.

---

**2.** We do not opine as to the viability of a new action on the basis of the newly developed facts.