RENDERED: AUGUST 15, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1033-MR

JOSEPH MUTH                                                   APPELLANT


                       APPEAL FROM MADISON CIRCUIT COURT
v.                      HONORABLE DAVID M. WARD, JUDGE
                        ACTION NO. 19-CI-00522

ELAINE PHILLIPS, A/K/A SUSAN
ELAINE PHILLIPS; BRAD PHILLIPS;
DAVID MOONEY; JOYCE MOONEY;
LINDA ADAMS; MALCOLM
FRISBIE; MOLLY FRISBIE; PAUL
ADAMS; RUTH WOLFE; AND VICKI
PHILLIPS                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND ECKERLE, JUDGES.

CETRULO, JUDGE: Joseph Muth ("Muth") appeals orders of the Madison

Circuit Court that found deed restrictions enforceable and ordered him to remove

the outbuilding he constructed in violation of those restrictions. After review, we

affirm.

# BACKGROUND

In the 1970s, Virgil McWhorter and Bill E. Willoughby (together, the "Developers," and/or the original "Owners") developed Will-O-Mac Place Subdivision ("Will-O-Mac"). Will-O-Mac consists of two subdivision phases that were separately recorded in the Madison County Clerk's Office ("Phase I" and/or "Phase II"). Phase I and Phase II do not have identical covenants; only Phase I covenants are relevant here. In pertinent part, the Phase I restrictions read:

> Lots will be made available to other builders and individuals, but all plans must be approved by the Will-O-Mac Place owners, [the Developers], or their heirs or assigns.
>
> . . .
>
> 6. No detached garage or outbuilding shall be nearer than 75 feet from the front line nor nearer than 12 feet from any side or rear lot line. All outbuildings must be approved by the owners of Will-O-Mac Place as to location, style, and materials.
>
> . . .
>
> 15. Since it is the intention of these restrictions that only residences of real architectural merit, good design, and suitable materials shall be erected in Will-O-Mac Place, the plans and specifications for the erection or the alteration of any building, fence, wall, or other structure must be approved in writing by the Owners of Will-O-Mac Place before work is begun. The plans and specifications must be left on file with the said owners of Will-O-Mac Place.

16.  The Owners of Will-O-Mac Place shall have the right to refuse to approve any plans and specifications for building . . . which are not deemed by them as suitable or desirable, in their opinion.

. . .

19.  The covenants herein contained are to run with the land and shall be binding on all persons claiming under them until December 31, 1998, at which time covenants shall be automatically extended for successive periods of 10 years, unless by the vote of the majority of the then property owners of lots, it is agreed to change said covenants and building restrictions in whole or in part.

In February 2018, Muth purchased property (lot 22) within Phase I of Will-O-Mac with these restrictions – *i.e.*, the restrictive covenants – still recorded. Muth was aware of the restrictive covenants at that time, but later testified that instead of seeking legal advice, he relied on his realtor who had informed him that the restrictive covenants had been abandoned. Muth stated that his realtor spoke with the Madison County Judge Executive who stated that there was no review process for the approval of plans for prospective Phase I construction (as required by no. 15 of the restrictive covenants) and there had not been for at least 20 years.

In July 2019, Muth obtained building and sanitation permits and began constructing a large outbuilding without regard to the restrictive covenants or the protestations of his neighbors. The next month, in August, Muth's neighbor, Elaine Phillips ("Phillips"), filed a complaint in Madison Circuit Court, requesting enforcement of the restrictive covenants and an injunction stopping construction on

Muth's outbuilding.  Soon after, Phillips amended her complaint and joined additional Phase I property owners (collectively, "Appellee Neighbors").  Appellee Neighbors alleged Muth's outbuilding violated the restrictive covenants by being located within the setback lines; opening to the street; improperly extending a fence into a neighbor's lot; the outbuilding's roof and exterior walls violated uniformity requirements; and the plans had not been preapproved by the current Phase I owners.

In September 2019, the circuit court held a hearing.  The parties stipulated that there had never been a homeowners' association ("HOA") and the Developers were deceased.  However, Appellee Neighbors argued the restrictive covenants ran with the land and the current Phase I owners stepped into the place of the original Developers/Owners (for deed restriction purposes).  Appellee Neighbors argued that the restrictive covenants were enforceable upon the current Phase I owners and Muth had violated those restrictions to his own detriment.  Conversely, Muth argued that the restrictive covenants had been abandoned and were no longer enforceable.  After Muth and Phillips testified, the court reserved judgment but "warned" Muth that an order mandating removal of the outbuilding could be possible; nonetheless, Muth completed construction of the outbuilding.

In October 2019, the circuit court granted injunctive relief (in favor of Appellee Neighbors) that enjoined Muth "from further violating" the restrictive

covenants. That "2019 Injunctive Relief" stated: (1) the Developers intended to create a uniform subdivision; (2) the Developers intended the restrictive covenants to run with the land; (3) the restrictive covenants had not been modified by the Phase I owners; and (4) the right to enforce the restrictive covenants had not been waived or abandoned. The 2019 Injunctive Relief did not compel Muth to remove his outbuilding and reserved judgment as to the appropriate remedy for breach of the covenants.

The next month, in November 2019, Appellee Neighbors filed a motion for summary judgment. Muth responded, argued summary judgment was premature, and moved the court to make additional findings of fact relating to abandonment and/or waiver of the restrictive covenants. Specifically, Muth requested the court make additional findings including: (1) at least 37% of the homes in Will-O-Mac have unapproved outbuildings; (2) in the last 20 years, no newly constructed outbuilding, fence, pool, deck, patio, addition/alteration within Phase I has gone through the approval process required by the restrictive covenants; (3) plans for all structures built in the last 20 years in Will-O-Mac are not on file with "Said owners of Will-O-Mac Place" as required by the restrictive covenants; and, (4) there is no anti-waiver clause in the restrictive covenants.

Almost two years later, in June 2021, the circuit court denied Muth's motion and granted summary judgment in favor of Appellee Neighbors ("2021

Summary Judgment").  The 2021 Summary Judgment did not make additional findings of fact but adopted the 2019 Injunctive Relief (in full).  The 2021 Summary Judgment:  (1) denied Muth's motion for additional findings of fact because "nothing in the record contradicts the findings and analysis in the [2019 Injunctive Relief,]" and (2) determined judgment for Appellee Neighbors was proper because there was no issue of material fact, and they were entitled to judgment as a matter of law.  Again, the court reserved on remedy but noted that after an inspection of the area, the court may order the outbuilding's removal.

Over approximately the next three years, the parties attempted to establish an approval process pursuant to the restrictive covenants and Muth attempted to gain approval for his outbuilding from his Phase I neighbors.  The court indicated that if Muth could attain proper approval for his outbuilding, it would not be inclined to order the outbuilding's removal/destruction.

In January 2024, Muth moved for equitable relief and/or setting aside the 2021 Summary Judgment because:  (1) he had now attained approval for his outbuilding from a group of Phase I neighbors, and (2) regardless of approval, the restrictive covenants had been waived and/or abandoned because the Phase I neighbors had not enforced them on any construction for the last 20 years.

In July 2024, the court denied Muth's motion and ruled on remedy ("2024 Final Order").  This Final Order – the first final and appealable order in the

-6-

action – incorporated, by reference, both the 2019 Injunctive Relief and 2021 Summary Judgment. Relying mainly on *Colliver v. Stonewall Equestrian Estates Association, Inc.*, 139 S.W.3d 521, 522-23 (Ky. App. 2003), the court determined that the restrictive covenants had not been abandoned and/or waived, Muth knowingly violated those covenants, and as Muth failed to get approval for his outbuilding from a majority[1] of the Phase I owners, the only appropriate remedy is removal of the outbuilding. The 2024 Final Order stated,

> Evidencing the lack of care or caution shown by Mr. Muth, he even went so far as to construct a fence in his neighbor's property making it clear that he not only failed to ever consult counsel regarding any concerns he had, but he also chose not to take the minimally reasonable step of engaging the services of a surveyor when undertaking this construction project. As a result of his decisions, he built the structure at issue within, and in violation of, the set back lines of his lot as revealed by a survey which was conducted by [*Appellee Neighbors*] and only *after* this litigation was commenced. By continuing construction, Mr. Muth "took an unwise risk and expended a large amount of money in spite of this litigation[,]" in spite of his neighbors who brought their concerns to him during construction, and in spite of the Court's own warning not to proceed. *See Colliver*, 139 S.W.3d at 527.

Muth made a motion to reconsider that order, which the circuit court denied. Muth appealed. Further facts will be developed as necessary.

---

[1] Muth argued he had a majority of the Phase I owners' approvals, but as one of those homeowners was actually in Phase II, the court ruled that "at best Mr. Muth obtained one vote shy of the majority needed to modify the restrictive covenants."

## STANDARD OF REVIEW

Our review encapsulates the 2019 Injunctive Relief, 2021 Summary Judgment, and 2024 Final Order because: (1) the 2024 Final Order adopted and incorporated those two prior orders, and (2) the 2019 Injunctive Relief and 2021 Summary Judgment[2] were interlocutory because they did not finally adjudicate all the claims and the rights and liabilities of all the parties (especially considering the interconnected nature of Muth's substantive arguments and resulting remedy). *See* Kentucky Rule of Civil Procedure ("CR") 54.02. However, the crux of all three orders is the ruling on restrictive covenants, a question of law we review *de novo*. *RAZ, Inc. v. Mercer Cnty. Fiscal Ct.*, 706 S.W.3d 17, 21 (Ky. 2024) (citing *Hensley v. Gadd*, 560 S.W.3d 516, 521 (Ky. 2018)).

Additionally, the circuit court's factual findings are binding unless clearly erroneous. CR 52.01. Findings of fact are clearly erroneous if unsupported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). Substantial evidence is "some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of

---

[2] We note, our standard of review and analysis would have been quite different had the 2021 Summary Judgment been final and appealable because review of a summary judgment order requires inquiry into whether there is an issue of material fact. *See* CR 56.03; *see also Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021). However, as will become apparent, the Final Order clarified any remaining issue of **material** fact.

reasonable men." *Whittaker v. Rowland*, 998 S.W.2d 479, 481-82 (Ky. 1999) (citation omitted).

## ANALYSIS

On appeal, Muth argues the Phase I owners cannot now arbitrarily apply the restrictive covenants to his outbuilding. More specifically, Muth argues: (1) the character of Will-O-Mac has changed to such an extent that the restrictive covenants (regarding outbuildings) were waived and/or abandoned, (2) the circuit court misapplied *Colliver*, *supra*, and (3) contrary to the circuit court's ruling, Muth *did* have a majority of the Phase I owners approve his outbuilding, thereby making removal inequitable. We will address Muth's arguments in full, but we must distinguish between questions of facts and those of law.

### A. The circuit court's factual finding – that Muth violated the restrictive covenants – is not clearly erroneous.

"The fundamental rule in construing restrictive covenants is that the intention of the parties governs." *KL & JL Invs., Inc. v. Lynch*, 472 S.W.3d 540, 545 (Ky. App. 2015) (quoting *Colliver*, 139 S.W.3d at 522). Restrictions on the use of property should be decided on the merits, factually specific, and according to the covenants' plain language. *Gadd*, 560 S.W.3d at 521 (citations omitted)).

By its language, the Will-O-Mac restrictive covenants run with the land (unless changed by a majority of the Phase I owners), intend to create uniformity within the subdivision, provide setback guidelines for new construction,

and require plans for new construction to be pre-approved (and kept on file). Despite this, Phase I property owners have apparently built upon their properties in the last 20 years without prior approval. It is unclear from the record (1) if prior approval was not attained because there was no approval process in place (now that the original Owners are deceased and there is no HOA), and/or (2) if the new construction projects were not contested by other Phase I owners because the projects remained consistent with the spirit of covenants, maintained uniformity within the neighborhood, and followed setback and lot line parameters. However, while these unknowns might be relevant to Muth's argument, he did not factually support them, and they are not dispositive on appeal under these circumstances.

Muth does not contest the finding that the Will-O-Mac covenants were intended to create a uniform, visually consistent neighborhood. Muth testified that he was aware of the restrictive covenants prior to constructing his outbuilding, but the 2024 Final Order stated that despite that knowledge, Muth violated the covenants in numerous ways. The order stated that Muth built his outbuilding "so as to actually violate the set back lines for his lot" and "further violated the restrictions by placing a border fence extending as far as 10 feet onto his neighbor's land." The court stated Muth also violated the covenants by failing to get his construction plans pre-approved and building his outbuilding

aesthetically inconsistent with his home.[3] Additionally, the circuit court found the covenants prohibit a garage/outbuilding from having its opening facing the street, but despite his intention not to use the outbuilding as a garage, the structure nonetheless opened to the street. Muth does not contest these particular violation findings; he merely argues that despite these findings, the restrictive covenants are not enforceable because they were waived and/or abandoned.

**B. The restrictive covenants were not waived or abandoned.**

Restrictive covenants may be lost by waiver or abandonment. *Bagby v. Stewart's Ex'r*, 265 S.W.2d 75, 77 (Ky. 1954). Muth argues the restrictive covenants were abandoned and/or waived (and therefore unenforceable) because the covenants were arbitrarily applied and due to this arbitrary enforcement, the character of the neighborhood has changed. We, as did the circuit court, disagree.

Restrictive covenants may be defeated (and thus unenforceable) if arbitrary enforcement of the covenants has resulted in a fundamental change in the character of the neighborhood. *Colliver*, 139 S.W.3d at 525 (citation omitted). Stated another way,

> [a] waiver of restrictive covenants occurs when "'[a] change in the character of the neighborhood which was intended to be created by restrictions . . . generally . . . prevent[s] their enforcement in equity, where it is no

---

[3] Three sides of the outbuilding are metal, while his home exterior is entirely brick (veneer); the pitch of his home's roof is steeper than his outbuilding's roof; the roof on his outbuilding is metal, but the roof on his home is shingle.

longer possible to accomplish the purpose intended by such covenant.'" *Logan v. Logan*, 409 S.W.2d 531, 534 (Ky. 1966) (quoting [*Bagby*, 265 S.W.2d at 77).]

*Gadd*, 560 S.W.3d at 526.

Here, the parties acknowledge that other homes (approximately 19) in Phase I have outbuildings. Notably, Muth does not support his "arbitrary enforcement" argument by asserting his outbuilding is consistent with the other (unchallenged) outbuildings within the subdivision. Muth does not direct us to other Phase I outbuildings that, like his, are quite large; in violation of the setback lines; extended (by a fence) beyond the lot lines; open to the street; and/or visually inconsistent with the home on the same lot.

Beyond outbuildings, Muth does not direct us to other Phase I homes that have violated the restrictive covenants to the extent of changing the character of the neighborhood. He argues other homes have not gained approval as required by the restrictive covenants, but that does not go to *character*. Other Phase I properties may have constructed elements possibly contrary to the explicit language in the restrictive covenants, but Muth presents no argument that those violations changed the *character* of the neighborhood. "[A]cquiescence in slight and inconsequential violations not effecting a material change in the character and use of the restricted territory does not estop a property owner from objecting to a

-12-

substantial violation of the restrictive covenant." *Biltmore Dev. Co. v. Kohn*, 39 S.W.2d 687, 689 (Ky. 1931) (citation omitted).

The circuit court, in its Final Order, stated that it "inspected the property and the entirety of Phase I of Will O Mac subdivision on two occasions following the June 12, 2024, hearing." The circuit court stated those other outbuildings are "structures of a wholly different character and nature when compared to the structure at issue in the case *sub judice*." Based on those firsthand inspections, the court determined that *the character of the neighborhood had not been changed* to such an extent as to make the covenants unenforceable. We must give deference to the circuit court's factual findings, especially here, when the court personally visited the neighborhood *twice* to assess the character of Will-O-Mac. *See* CR 52.01.

Muth asserts that the circuit court misinterpreted *Colliver*, *supra*, but we do not agree. 139 S.W.3d 521. In *Colliver*, property owners ("Collivers") wanted to build a detached garage on their lot. *Id.* at 522. However, the recorded restrictive covenants for the community required all detached garages "to be approved by the Developer." *Id.* at 523. As the Developer was no longer connected with the community (and was a *dissolved* corporate entity at that time), the Collivers requested permission from the HOA. *Id.* at 523-24. The HOA denied their request to build a detached garage "several" times. *Id.* at 522. Despite

this, the Collivers began constructing a detached garage and ultimately spent approximately $70,000 on the construction. *Id.* The HOA initiated litigation, and the court granted summary judgment in the HOA's favor and ordered the garage removed. *Id.*

On appeal, the Collivers first argued that only the Developer (not the HOA) had approval authority, but this Court did not agree. We held the Developer was not permitted to carry out business, other than winding up and liquidating its business and affairs (and thus could not give approval), and the Developer intentionally created an HOA to enforce and oversee the restrictive covenants that ran with the land. *Id.* at 524. Next, the Collivers argued that even if the HOA had authority to enforce the covenants, such authority was waived by failing to enforce other restrictions. *Id.* at 525. They argued that other improvements (pools, fences) were allowed in the neighborhood in contravention of the covenants; therefore the covenants had been waived. *Id.* Again, we did not agree.

Citing to long-established precedent, this Court held that arbitrary enforcement of covenants does not necessarily render covenants unenforceable *unless* arbitrary enforcement has resulted in a fundamental change in the character of a neighborhood. *Id.* (citing *Bagby*, 265 S.W.2d at 77 and *Hardesty v. Silver*, 302 S.W.2d 578, 582 (Ky. 1956)). No such change in character was found in connection with the other improvements, but the Collivers' garage was *not* in the

same class as those improvements. *Id.* at 526. The Court noted that the Collivers'

garage was noticeably larger than other improvements, and when the HOA

attempted to work with the Collivers to modify their plans to better fit in the

scheme of the neighborhood, they refused. *Id.* Ultimately, the Court held that the

covenants had not been waived by lack of enforcement and ordered the garage torn

down. *Id.* The Collivers challenged the court's order to remove the garage, but

this Court affirmed the circuit court's order because the Collivers were on notice

that they were proceeding without approval but "took an unwise risk and expended

a large amount of money in spite of [the] litigation[.]" *Id.* at 527.

Muth argues this action is distinct from *Colliver* because: (1) the

HOA in *Colliver* was strictly enforcing the garage restrictions while here no entity

was enforcing the outbuilding restrictions in Will-O-Mac; and (2) the *Colliver*

covenants included an express waiver clause,[4] but no such clause was within the

Will-O-Mac provisions. We agree with Muth's factual distinctions, and we share

his concerns about the lack of an established approval authority (from which Muth

could have/should have sought approval). However, *under these circumstances*,

those distinctions do not detract from *Colliver's* binding, relevant interpretation of

the law in the Commonwealth.

---

[4] *I.e.*, a clause stating that failure of the HOA to enforce any covenant "shall in no event be deemed a waiver of the right to do so thereafter."

-15-

*Colliver* correctly quotes *Bagby*, *supra*, in that arbitrary enforcement of covenants does not render the covenants unenforceable unless the failure to enforce them results in a change in the character of the neighborhood. *Id.* at 525 (quoting *Bagby*, 265 S.W.2d at 77). As established, here, the circuit court's character finding – that no such change in the character occurred in Will-O-Mac due to arbitrary enforcement of the restrictive covenants – is not clearly erroneous.

Additionally, *Colliver* similarly applies *Hardesty*, *supra*, that states restrictive covenants are still entitled to be enforced (despite relaxation and/or unenforcement) when "there still remains something of substantial value to those entitled to benefit [from the restrictive covenants.]" *Id.* (quoting *Hardesty*, 302 S.W.2d at 582). Here, the Appellee Neighbors argued from the initiation of the litigation that while Muth's outbuilding was inconsistent with the covenants, the other outbuildings were not. In fact, in Muth's appellate brief he alludes to the accuracy of that argument by admitting it "may be true" that his outbuilding is larger than the other Will-O-Mac outbuildings. Notably, again, Muth does not direct us to any other outbuildings in Will-O-Mac *consistently inconsistent* with the restrictive covenants. Although the covenants have not been strictly enforced in reference to the other outbuildings, Muth has not put forth any evidence to counter Appellee's argument that there still remains something of substantial value to those entitled to benefit of the covenants. *See id.*

-16-

Therefore, we cannot conclude that the restrictive covenants have been waived and/or abandoned by the lack of enforcement.

### C. The circuit court's factual finding – that Muth did not attain approval from a majority of Phase I owners – is not clearly erroneous.

The Will-O-Mac deed restrictions stated that the covenants run with the land "unless by vote of the majority of the then property owners of lots, it is agreed to change said covenants and building restrictions in whole or in part." The circuit court determined the one-lot-one-vote regime would be most appropriate, and Muth does not challenge that regime. The circuit court found that, contrary to his argument, Muth did *not* have approval from a majority of the Phase I owners; he was *one short* of a majority. The court determined there are 56 lots in Phase I and Muth only received *28 votes* in favor of approving this outbuilding. Against Muth's protestations, the court excluded the approval vote from Lot 37. Again, we review this factual finding for clear error. *See* CR 52.01.

Muth argues a majority of Phase I owners – *29 owners* – voted to allow him to keep his outbuilding. Muth argues the circuit court's finding that Lot 37 was *not* in Phase I is erroneous, and Lot 37 rightfully belongs in Phase I for voting purposes (thereby giving him a majority). He asserts *qualifying provisions* within the Phase I Restrictions place Lot 37 in Phase I and such provisions control over any handwritten notations. Muth directs us to two qualifying provisions: (1)

he asserts "the preamble [for Phase I] expressly states, 'For your protection as a home owner, these restrictions and covenants have been provided for all numbered lots.'" Muth argues that as Lot 37 is numbered, it falls within Phase I. And, (2) he quotes provision #7 of the Phase I restrictions: "No building shall be erected on any lot nearer the lot line than the building set-back line as shown on the recorded plat except lots Nos. 7, 17, 27, 37, 45, and 52." Muth argues that as Lot 37 was named specifically in this provision, that lot must be within Phase I. While these quotes to the provisions are accurate, under these circumstances, Muth does not meet his burden of showing that the circuit court's factual finding was clearly erroneous.

In finding Muth lacked a majority, the court stated "[t]he recorded plat of Phase I contains the following handwritten notation, with an arrow pointing to Lot 37: 'Lot 37 Is Not A Part Of This Subdivision[.]'" Additionally, the plat for Phase II reflects that Lot 37 is part of *that* subdivision. Also, we note, while not argued by the Appellee Neighbors on appeal, Muth admits in his appellate brief that "since [Muth] acquired all his votes, the owner of lot 37 subsequently withdrew his vote." Muth argues the withdrawal should have no effect, but it certainly does not help his argument.

The circuit court determined that Muth lacked a majority of approval votes because Lot 37 was not in Phase I. That finding is not clearly erroneous

-18-

because, as the court stated, the plat for Phase I expressly *excludes* Lot 37, and the plat for Phase II expressly *includes* Lot 37. After determining he did not have a majority, to remedy his intentional breach, the circuit court ordered the removal of Muth's outbuilding. The court noted that Muth violated numerous provisions within the restrictive covenants "with a knowing disregard of the letter, spirit, and intent of said restrictions." The court stated that Muth was informed as to the possibility of a removal order but chose to complete his outbuilding regardless of his neighbors' protestations and/or the court's warnings. Accordingly, we affirm this remedy.

## CONCLUSION

Therefore, we AFFIRM the Madison Circuit Court orders – 2019 Injunctive Relief, 2021 Summary Judgment, and 2024 Final Order – and the court's order requiring removal of Muth's outbuilding.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Michael S. Fore
Isaac N. Claywell
Richmond, Kentucky

BRIEF FOR APPELLEES:

Jimmy Dale Williams
Randy Martin O'Neal
Richmond, Kentucky